1  Monica M. Quinn, Bar No. 198332
   mquinn@littler.com
2  Kyra A. Buch, Bar No. 296192
   kbuch@littler.com
3  LITTLER MENDELSON P.C.
   633 West 5th Street
4  63rd Floor
   Los Angeles, California  90071
5  Telephone:  213.443.4300
   Fax No.:    213.443.4299
6
   Attorneys for Defendant
7  OFFICE DEPOT, LLC.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  ANDREW KALLSEN, an individual,          Case No.  2:21-cv-08854

12            Plaintiff,                    **DECLARATION OF KYRA A.
                                            BUCH IN SUPPORT OF
13       v.                                 DEFENDANT OFFICE DEPOT,
                                            LLC'S NOTICE TO FEDERAL
14  OFFICE DEPOT, LLC, a Delaware           COURT OF REMOVAL**
    Limited Liability Company; and DOES 1
15  through 50, inclusive,                  (Los Angeles Superior Court, Case No.
                                            21STCV37287)
16            Defendants.

17                                          Trial Date:TBA
                                            Complaint Filed:      October 8, 2021
18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

4875-1737-9841.1 / 063095-1798

## DECLARATION OF KYRA A. BUCH

I, Kyra A. Buch, hereby declare and state as follows:

1.      I am an attorney with the law firm of Littler Mendelson, a Professional Corporation, and counsel for Defendant Office Depot, LLC ("Defendant") in the above-entitled matter. I am duly licensed to practice law in the State of California and before the United States District Court for the Central District and am responsible for representing said Defendant in this action. Except where otherwise indicated, all of the information contained herein is based upon my personal knowledge and if called and sworn as a witness, I could and would competently testify thereto.

2.      On October 8, 2021, Plaintiff commenced this action by filing a complaint in the Superior Court of California, County of Los Angeles entitled *Andrew Kallsen, an individual v. Office Depot, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive*, as designated as a Case No. 21STCV37287 ("Complaint"). Attached here to as **Exhibit "A"** is a true and correct copy of Plaintiff's Complaint.

3.      Attached hereto as **Exhibit "B"** is a true and correct copy of the Service of Process Notice received from Defendant's registered agent, CT Corporation, indicating Plaintiff's service of Summons and Complaint, reflecting personal service on October 12, 2021.

4.      Attached here to as **Exhibit "C"** is a true and correct copy of the documents served on Defendant in this matter, which includes the Summons, Complaint, Civil Case Cover Sheet and Cover Sheet Addendum, Notice of Confirmation of Electronic Filing, Notice of Case Assignment, Alternative Dispute Resolution Information Package, Voluntary Efficient Litigation Stipulations Materials, Informal Discovery Conference Information, and First Amended General Order re Mandatory Electronic Filing for Civil.

5.      Attached hereto as **Exhibit "D"** is a true and correct copy of the Answer to Plaintiff's Unverified Complaint filed on November 8, 2021 by Defendant in this action.

4875-1737-9841.1 / 063095-1798

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

2

DECLARATION OF KYRA A. BUCH IN
SUPPORT OF DEFENDANT OFFICE
DEPOT, LLC'S NOTICE OF REMOVAL

6.      Attached hereto as **Exhibit "E"** is a true and correct copy of Plaintiff's Peremptory Challenge to Judicial Officer filed on October 25, 2021 by Plaintiff in this action.

7.      To the best of my knowledge, the following documents are the only documents that have been filed in this case with the Superior Court for the County of Los Angeles: Summons, Complaint, Civil Case Cover Sheet and Cover Sheet Addendum, Notice of Confirmation of Electronic Filing, Notice of Case Assignment, Alternative Dispute Resolution Information Package, Voluntary Efficient Litigation Stipulations Materials, Informal Discovery Conference Information, First Amended General Order re Mandatory Electronic Filing for Civil, Answer, and Plaintiff's Peremptory Challenge to Judicial Officer.

8.      As of today, no other parties have been validly served with the Summons and Complaint in this matter.

I hereby declare under penalty of perjury, under the laws Pof the United States and the State of California, that the foregoing is true and correct, and that this declaration was executed on November 10, 2021 in LOS ANGELES, CA.


Kyra A. Buch

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

4875-1737-9841.1 / 063095-1798

3

DECLARATION OF KYRA A. BUCH IN
SUPPORT OF DEFENDANT OFFICE
DEPOT, LLC'S NOTICE OF REMOVAL

# EXHIBIT "A"

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Steven Kleifield

Electronically FILED by Superior Court of California, County of Los Angeles on 10/08/2021 04:42 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

**RISE LAW FIRM, P.C.**
ELIOT J. RUSHOVICH (SBN 252343)
LISA M. WATANABE-PEAGLER (SBN 258182)
ELISSA A. WAIZMAN (SBN 329959)
8383 Wilshire Boulevard, Suite 315
Beverly Hills, CA 90211
Telephone: (310) 728-6588
Facsimile: (310) 728-6560
eliot@riselawfirm.com
lisa@riselawfirm.com
elissa@riselawfirm.com

Attorneys for Plaintiff
ANDREW KALLSEN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| ANDREW KALLSEN, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>OFFICE DEPOT, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.  **21STCV37287**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **DISCRIMINATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 *et seq.*;**<br><br>2. **RETALIATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 *et seq.*;**<br><br>3. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 et seq.;**<br><br>4. **FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 *et seq.*;**<br><br>5. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 *et seq.*;**<br><br>6. **RETALIATION IN VIOLATION OF THE CFRA;**<br><br>7. **RETALIATION IN VIOLATION OF CAL. LABOR CODE § 1102.5; AND**<br><br>8. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** |

Plaintiff Andrew Kallsen ("Plaintiff") hereby brings his Complaint for Damages against Defendants Office Depot, LLC (the "Company" or "Defendant") and Does 1 through 50, inclusive, and alleges the following based on knowledge as to himself and his known acts, and on information and belief as to all other matters:

<div align="center">

**I.**

**PARTIES**

</div>

1. At the relevant times mentioned herein, Plaintiff was employed by the Company. Plaintiff performed work for the Company in Los Angeles County, California. The unlawful conduct alleged herein occurred in whole or significant part in Los Angeles County, California.

2. At the relevant times mentioned herein, the Company was a Delaware limited liability company with its headquarters in Boca Raton, Florida and conducting business in Los Angeles County.

3. At the relevant times mentioned herein, the Company was an "employer" of Plaintiff, as such term is defined under the California Fair Employment and Housing Act (as amended), in that it regularly employed five (5) or more persons.  Therefore, the Company was subject to the FEHA.  In addition, at the relevant times mentioned herein, the Company was an "employer" of Plaintiff, as such term is defined under the California Family Rights Act ("CFRA") in that it had five (5) or more employees on the payroll during each of any 20 or more calendar weeks in the current calendar year or the preceding calendar year.  Therefore, the Company was subject to the CFRA

4. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of said Defendants when the same has been ascertained.  Each of the fictitiously named Defendants is responsible in some manner for the acts complained of herein.  Unless otherwise stated, all references to named Defendants shall include DOE Defendants as well.

///

<div align="center">

COMPLAINT FOR DAMAGES

</div>

## II.

### JURISDICTION AND VENUE

5.      Jurisdiction and venue are proper in this Court because the unlawful conduct alleged to have been committed occurred in Los Angeles County and defendants were and/or are residents of Los Angeles County or are doing or did business in Los Angeles County. *See also* Govt. Code § 12965(b) (stating venue is appropriate in, *inter alia*, any county in which the unlawful conduct is alleged to have been committed or within the county of defendant's residence or principal office).

6.      The amount in controversy in this matter exceeds the sum of $25,000.00, exclusive of interest and costs.

## III.

### FACTUAL ALLEGATIONS

7.      Plaintiff was employed by the Company for over 15 years in various sales positions. Plaintiff commenced his employment on or about November 21, 2005, as a large account hunter. Throughout his employment with the Company, Plaintiff performed so well that he received numerous positive performance reviews, bonuses, raises, and promotions. In or around 2008, Plaintiff developed a novel program to create workbooks of consumable content for school districts in the K-12 public sector. Thereafter, the Company implemented Plaintiff's program and promoted him to National Account Manager in the Company's copy and print division. While working in this role, Plaintiff became a subject matter expert in the K-12 public sector. In or around 2016, Plaintiff was promoted to Lead K-12 Instructional Solutions Consultant. The Company dissolved Plaintiff's team in 2018 and Plaintiff transitioned back to the copy and print division as a CPD Development Manager. Plaintiff worked in this position until the abrupt termination of his employment on or about April 22, 2021.

8.      In or around January 2018, Plaintiff injured his left foot outside of work and was required to undergo surgery. Thereafter, Plaintiff began a short-term disability / CFRA leave of absence while he recovered from surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through in or around June 2018.

9.      Prior to his leave, Plaintiff had accounts in California, Oregon, Washington, Nevada, and

COMPLAINT FOR DAMAGES

Arizona. Upon his return from leave, Plaintiff learned that the Company had reassigned some of the accounts in these regions to other members on his team. Plaintiff also received a batch of negative accounts which were previously managed by other members on his team. Nobody else on Plaintiff's team was given worse accounts at this time. As such, Plaintiff was forced to spend extra time working to keep up with his sales goals. Plaintiff also spent a large portion of his time securing business from and salvaging relationships with accounts that were no longer on his account list but would not have continued doing business with the Company without Plaintiff's involvement. Ultimately, Plaintiff was only able to achieve 90.4% of his sales targets. Nonetheless, Plaintiff endeavored to make the best of his 2019 book of business in light of the circumstances.

10. In Plaintiff's 2019 Annual Performance Review, the Company issued Plaintiff an overall rating of "Inconsistently Meets Expectations" noting that Plaintiff had fallen short in his marginal goal and rate. In the nearly 14 years that Plaintiff had worked for the Company he never received an overall rating below "Meets Expectations." Notably, the Company had restructured the way it tracked its book of business which resulted in an inaccurate reflection of Plaintiff's actual performance. In fact, the review stated that "These numbers are not final compensation numbers." Nevertheless, Plaintiff's performance rating was never changed once the compensation numbers were finalized.

11. In or around January 2020, Plaintiff underwent abdominal surgery for multiple hernias. Thereafter, Plaintiff began a second short-term disability / CFRA leave of absence while he recovered from his surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through on or about July 6, 2020.

12. Shortly before Plaintiff went on his medical leave of absence, Dan Bowen ("Bowen") became Director of Print Services and Plaintiff's new manager. Plaintiff only had one interaction with Bowen before taking his medical leave. When Plaintiff returned from leave, he learned that Bowen had divested him of all his accounts in Oregon, Washington, and Nevada, and reassigned them to other members on Plaintiff's team. Most of the accounts were ones that Plaintiff had brought in and worked to build during his employment with the Company. Bowen left Plaintiff with a small portion of accounts in Southern California and a few inactive accounts in Arizona, a shell of his former portfolio. Bowen

also gave Plaintiff some of the worst accounts from his other team member's portfolios. Nobody else on Plaintiff's team was given worse accounts at this time and they all retained any accounts that were performing well.

13. Almost immediately thereafter, Plaintiff emailed Bowen to voice his concerns about his new accounts. Plaintiff went from maintaining a portfolio of accounts worth approximately $3,000,000 to maintaining a portfolio worth less than $100,000. This was problematic because Plaintiff required a minimum of $300,000 worth of business in order to reach his targets and receive a bonus. As such, Plaintiff complained to Bowen that he was unable to achieve his goals with these smaller and inactive accounts. Plaintiff proposed that he be reassigned some of his old accounts so that he could keep his head above water. Bowen replied that he was "working for Plaintiff" and would discuss Plaintiff's concerns with his boss, Robert Wheatley ("Wheatley"), Managing Director Print Services. Thereafter, Plaintiff repeatedly restated his concerns to Bowen during their bi-weekly one-on-ones, yet Bowen always gave Plaintiff same evasive response – that he was working to improve Plaintiff's accounts.

14. On or about August 25, 2020, Bowen issued Plaintiff a verbal warning concerning Plaintiff's ability to retain and grow business in his assigned accounts. Although Bowen had a background in sales, he had no prior experience working in the K-12 public sector. Thus, Plaintiff explained that due to the seasonality and cyclical nature of the K-12 business, some of the revenue from his accounts would be delayed. Plaintiff further pointed out that he had attempted to discuss the composition of his portfolio with Bowen on multiple occasions. For instance, Plaintiff had an account that was worth negative $250,000 even though there was an opportunity for $1,500,000 worth of business on the account before Plaintiff's leave – an opportunity the previous account manager had squandered. Plaintiff stated that he felt that he was being unfairly penalized for this loss even though he was not responsible for it. Plaintiff asked Bowen once again about the possibility of restoring some of his former accounts. Bowen indicated that he understood Plaintiff's concerns but gave Plaintiff the same run around – that he would speak with Wheatley and work to increase the value of Plaintiff's accounts. Notably, Plaintiff never previously received any verbal or written warnings pertaining to the ability to retain and grown business in his nearly fifteen years at the Company. To the contrary, Plaintiff was always in the

top 10 compared to his chain of sales colleagues. In fact, during Plaintiff's employment with the Company, the program he created generated approximately $30,000,000 in revenue, $12,000,000 of which Plaintiff was directly responsible for bringing in.

15.     On or about October 21, 2020, Plaintiff had a one-on-one conversation with Bowen wherein Bowen reiterated his previous concerns about Plaintiff's performance. Plaintiff once again reminded Bowen that he was unable to effectively grow and manage his assigned accounts given their size and/or negative status. In response, Bowen downplayed Plaintiff's concerns by making comparisons to other team members without recognizing the difference between the seasonality of Plaintiff's business and the type of accounts he maintained. For instance, Bowen praised one of Plaintiff's colleagues for recently securing a $5,000.00 contract. Plaintiff explained to Bowen that his accounts, unlike most of his team members, were under government contracts with specific buying guidelines so he was contractually unable to secure certain contracts like they could. Further, the other team members were benefitting from relationships and contracts that Plaintiff was responsible for establishing. In fact, Plaintiff had previously forwarded Bowen emails from multiple former customers asking why Plaintiff was no longer assigned to their accounts. One former customer begged Plaintiff to come back because the new account manager did not have experience in the K-12 public sector nor an understanding of its business needs. Plaintiff therefore assisted the account manager with the back-to-school rush on the account (in addition to working on his own accounts) but did not receive any credit for his work. Bowen once again vaguely stated that he would talk to Wheatley about Plaintiff's accounts but told Plaintiff that he needed to do his best with what he had.

16.     Two weeks later, on or about November 3, 2020, Bowen issued Plaintiff a Letter of Concern (the "Letter"). The Letter stated that Bowen had concerns regarding Plaintiff's ability to execute certain areas central to Plaintiff's role and outlined several "Action Steps" for Plaintiff to work towards. Plaintiff was surprised given his previous communications with Bowen concerning the state of his accounts and seasonality and nature of his business – concepts Bowen struggled to grasp. Thereafter, Plaintiff reached out to HR and asked if he needed to sign the Letter because he did not believe it was an accurate representation of his performance given the circumstances. Plaintiff was informed that he

did not need to sign the Letter, but he did need to work with his manager to remedy the purported issues. Plaintiff did not sign the Letter.

17.     Around this same time, Plaintiff also escalated his complaints to Wheatley directly via email. Plaintiff complained that he was being treated unfairly being because he was being held accountable for things that happened while he was on his medical leave. Plaintiff asked if Bowen and Wheatley were setting him up for failure since the business trends unequivocally showed that he would be unable to reach his goals with his current portfolio. Wheatley replied that everyone was being held account accountable for higher numbers, not just Plaintiff. In response, Plaintiff provided Wheatley with exact numbers and reason as to why the account reassignment was detrimental to his book of business. However, Wheatley never responded to Plaintiff's email.

18.     In or around December 2020, Plaintiff emailed the Company's HR department regarding the Letter and Bowen and Wheatley's failure to address his concerns regarding his assigned accounts. Plaintiff complained that he was being treated unfairly because he was being held accountable for things that had happened on his medical leave. Plaintiff also asked why he was the only one on the team who did not have $300,000 worth of accounts when he was used to managing $3,000,000 worth of accounts. Thereafter, someone form HR contacted Plaintiff and stated that the Company was reviewing his grievances.

19.     Thereafter, Bowen issued Plaintiff his 2020 Annual Performance Review with an overall rating of "Unsatisfactory Performance." Notably, Bowen wrote that Plaintiff was "Unsatisfactory' for all 4 quarters" in 2020 even though Plaintiff was on an approved medical leave of absence for the first 2 quarters of that year. Plaintiff therefore provided contextual feedback stating, "Unfor[tunately] I was on medical leave for half of 2020. When I returned I found that all of large pieces of business that I had sold and managed success[s]fully for years had been assigned to other reps in my absen[ce]. This was very unfair and has [a]ffected my income and earning potential greatly.  Since i was l[e]ft with o[n]ly small transactional business and one large negative account. This situation is still [a]ffecting me in 2021. I am currently working with HR and my manager [t]o resolve."

20.     In light of Plaintiff's performance review, on or about January 4, 2020, Plaintiff sent a

COMPLAINT FOR DAMAGES

letter to HR complaining that he believed the reassignment of his account was "unfair and punitive done in retaliation for his long leave of absence." Plaintiff further stated that he had discussed the issue with Bowen several times to no avail and during his 2020 review it was explained to him that it "had been discussed at higher levels and it was determined that there would be no change" to his accounts. Plaintiff once again requested that his account list be restored as it was before his medical leave of absence in 2020.

21.    In or around January 2021, Plaintiff learned that his HR complaint had been outsourced to a third-party attorney who represented the Company. During a phone call with the attorney, Plaintiff complained that he felt like he was being treated unfairly because of things that happened while he was on a medical leave. However, the attorney did not take Plaintiff's complaints seriously. He merely reviewed the Letter, stated that all the reasons Plaintiff was being disciplined were outlined therein, and informed Plaintiff that there was nothing he could do.

22.    On or about February 19, 2021, Bowen issued Plaintiff a Performance Improvement Process ("PIP") Memorandum placing him on a 60-day improvement plan. Bowen alleged that Plaintiff had not demonstrated behavior in line with the "Action Steps" previously outlined in the Letter. Plaintiff informed Bowen that it was impossible to meet the expectations given his book of business. Bowen nevertheless instructed Plaintiff to submit his own "Action Plan" to address his purported performance issues. Plaintiff refused to sign the PIP because he still believed that he was being set up for failure.

23.    Nonetheless, on March 17, 2021, Plaintiff submitted a Q1 Action Plan. Prior to submitting the final plan, Plaintiff had multiple conversations with Bowen to ensure it aligned with Bowen's expectations. During these conversations, Plaintiff made clear to Bowen that some of the expectations were unattainable due to the seasonality of the business and nature of the government contracts. However, Plaintiff stated that he would try to make progress. Plaintiff believed that Bowen was happy with the final plan.

24.    Over the following few weeks, Plaintiff made progress pursuant to the action plan. In fact, Bowen recognized and commended Plaintiff's improvement during their weekly one-on-ones. Bowen told Plaintiff several times that his activity was "through the roof" and that he was "doing all the

COMPLAINT FOR DAMAGES

right things" (or words of similar import).

25.    On or about April 22, 2021, Bowen and an HR representative from the Company collectively called Plaintiff and terminated his employment. Bowen claimed that Plaintiff was being terminated for performance but did not provide specific details. Plaintiff asked Bowen how termination was possible in light of the "Action Plan" they had created together and stated something to the effect of, "You know exactly what's happening here." Plaintiff meant that the Company was trying to get rid of him because of his medical leave. Bowen then informed Plaintiff that he could take the issue up with HR.

26.    The Company discriminated against Plaintiff based on his physical disabilities (actual and/or perceived) and retaliated against him for requesting reasonable accommodations for those disabilities.  Among other things, the Company targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then terminating Plaintiff's employment after he complained about unlawful retaliation. Plaintiff further alleges that the Company interfered and retaliated against him for his disabilities, for requesting accommodation, and for complaining about unlawful retaliation, by unlawfully terminating his employment.

## Managing Agents

27.    The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by its respective managing agents, including, but not limited to, Daniel Bowen and Robert Wheatley (collectively the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

28.    In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

- 8 -

retaliation based upon his physical disabilities and for requesting reasonable accommodations for those disabilities. Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, and placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

29.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

30.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

**IV.**

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

31.     Prior to the initiation of this lawsuit, Plaintiff filed a complaint against Defendant with the California Department of Fair Employment and Housing ("DFEH") pursuant to section 12900 *et seq.* of the California Government Code alleging the claims described in this Demand. On October 7, 2021 the DFEH issued a "right to sue" letter. True and correct copies of the administrative complaint and the "right to sue" letter are attached hereto collectively as **Exhibit A**. All conditions precedent to the institution of this lawsuit have been fulfilled. This action is filed within one year of the date that the DFEH issued its right to sue letters.

///

- 9 -

**V.**

**FIRST CAUSE OF ACTION**

**(Discrimination Based Upon Disability in Violation of the FEHA)**

**(On Behalf of Plaintiff Against All Defendants)**

32.     Plaintiff realleges and incorporates by reference paragraphs 1-31, inclusive, of this Complaint as though fully set forth herein.

33.     As set forth in paragraphs 7-26 above, the Company's supervisory and management employees discriminated against Plaintiff based on his physical disabilities (actual and/or perceived) in violation of the FEHA through numerous acts including, without limitation, divesting Plaintiff of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP, and ultimately terminating his employment after he requested and took two approved medical leaves of absence and complained about unlawful retaliation. Such acts constitute unlawful discrimination based in part on Plaintiff's disability in violation of California Government Code section 12940(a).

34.     As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

35.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

36.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

retaliation based upon his disabilities and need for accommodation related thereto. Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

37.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

38.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

39.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

40.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

COMPLAINT FOR DAMAGES

# VI.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of the FEHA)

### (On Behalf of Plaintiff Against All Defendants)

41.   Plaintiff realleges and incorporates by reference paragraphs 1-40, inclusive, of this Complaint as though fully set forth herein.

42.   California Government Code section 12940(m)(2) makes it an unlawful employment practice for an employer to "retaliate or otherwise discriminate against a person for requesting an accommodation for disability, regardless of whether the request was granted."

43.   As set forth in paragraphs 7-26 above, Plaintiff was disabled (actual and/or perceived) while employed by the Company. Plaintiff's physical disabilities (his foot injury and hernias) limited his ability to perform major life activities, including, without limitation, his ability to work (and he was perceived to have such limitation). The Company was made aware of Plaintiff's disabilities because Plaintiff informed the Company and its management about such disabilities and asked for reasonable accommodations during his employment, *i.e.*, a medical leave of absence and subsequent extensions from January through June 2018 and a second medial leave and subsequent extensions from January through July 2020.

44.   The Company retaliated against Plaintiff based on his physical disabilities (actual and/or perceived) and for requesting reasonable accommodations for those disabilities in violation of the FEHA through numerous acts including, without limitation, divesting Plaintiff of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP, and ultimately terminating his employment after he requested and took two approved medical leaves of absence and complained about unlawful retaliation.

45.   As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue,

COMPLAINT FOR DAMAGES

1   and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

2       46.    The Company's conduct, as described in paragraphs 7-26 above, was performed or

3   ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a

4   substantial portion of the Company's business operations, and each exercised substantial discretionary

5   authority over vital aspects of such operations including making significant decisions that affect the

6   company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive

7   conduct that justifies an award of punitive damages.

8       47.    In committing the foregoing acts as set forth above in paragraphs 7-26 above, the

9   Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

10   retaliation based upon his disabilities and need for accommodation related thereto. Among other things,

11   the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of

12   absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair

13   disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's

14   employment after he complained about unlawful retaliation.

15       48.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

16   Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for

17   his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

18   the law and Plaintiff's rights.

19       49.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

20   Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents

21   have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to

22   cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career,

23   livelihood, and emotional wellbeing.

24       50.    The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a

25   prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue

26   to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will

27   continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and

28

COMPLAINT FOR DAMAGES

1    costs.

2         51.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this

3    Court.

4                                              **VII.**

5                                 **THIRD CAUSE OF ACTION**

6        **(Failure to Prevent Discrimination and Retaliation in Violation of the FEHA)**

7                    **(On Behalf of Plaintiff Against All Defendants)**

8         52.    Plaintiff realleges and incorporates by reference paragraphs 1-51, inclusive, of this

9    Complaint as though fully set forth herein.

10        53.    California Government Code section 12940(k) makes it an unlawful employment practice

11   for an employer to "fail to take all reasonable steps to prevent discrimination ... from occurring." This

12   provision also makes it unlawful for an employer to fail to prevent retaliation. *See, e.g., Ortiz v. Georgia*

13   *Pacific*, 973 F. Supp. 2d 1162, 1184 (E.D. Cal. 2013) (citing *Taylor v. City of Los Angeles Dep't of Water*

14   *& Power*, 144 Cal. App. 4th 1216, 1240 (2006)).  The Company violated this provision by failing to

15   prevent discrimination and retaliation against Plaintiff, including those acts described in paragraphs 7-

16   26 above.  Additionally, the Company knew or should have known of the discrimination and retaliation

17   against Plaintiff yet failed to prevent such conduct or take any prompt or adequate remedial action.

18        54.    As a proximate result of the Company's conduct, Plaintiff has suffered and will continue

19   to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according

20   to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including

21   nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain,

22   discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

23        55.    The Company's conduct, as described in paragraphs 7-26 above, was performed or

24   ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a

25   substantial portion of the Company's business operations, and each exercised substantial discretionary

26   authority over vital aspects of such operations including making significant decisions that affect the

27

28

company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

56.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto.  Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

57.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

58.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

59.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs.

60.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

## VIII.

## FOURTH CAUSE OF ACTION

### (Failure to Accommodate Disability in Violation of the FEHA)

### (On Behalf of Plaintiff Against All Defendants)

61.    Plaintiff realleges and incorporates by reference paragraphs 1-60, inclusive, of this Complaint as though fully set forth herein.

62.    California Government Code section 12940(m) makes it unlawful "[f]or an employer or other entity . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

63.    As set forth in paragraphs 7-26 above, Plaintiff was disabled (actual and/or perceived) while employed by the Company.  Plaintiff's physical disabilities (his foot injury and hernias) limited his ability to perform major life activities, including, without limitation, his ability to work (and he was perceived to have such limitation).  The Company was made aware of Plaintiff's disability because Plaintiff informed the Company and its management about such disability and asked for reasonable accommodations during his employment, *i.e.*, a medical leave of absence and subsequent extensions from January through June 2018 and a second medial leave and subsequent extensions from January through July 2020.

64.    As set forth in paragraphs 7-26 above, Plaintiff sought reasonable accommodations for his disabilities. The Company seemingly appeared to accommodate Plaintiff by approving his requests for leave, but later sabotaged his book of business, issued him unwarranted disciplinary actions, and ultimately terminated his employment after her returned to work from two medical leaves of absence and complained about unlawful retaliation.  The Company cannot demonstrate that Plaintiff's reasonable accommodations would have imposed an undue hardship on the operation of its business, and therefore the Company's failure to accommodate Plaintiff was unlawful.

65.    As a proximate result of the Company's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including

1  nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain,
2  discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

3      66.    The Company's conduct, as described in paragraphs 7-26 above, was performed or
4  ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a
5  substantial portion of the Company's business operations, and each exercised substantial discretionary
6  authority over vital aspects of such operations including making significant decisions that affect the
7  company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive
8  conduct that justifies an award of punitive damages.

9      67.    In committing the foregoing acts as set forth above in paragraphs 7-26 above, the
10 Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and
11 retaliation based upon his disabilities and need for accommodation related thereto. Among other things,
12 the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of
13 absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair
14 disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's
15 employment after he complained about unlawful retaliation.

16      68.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing
17 Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for
18 his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for
19 the law and Plaintiff's rights.

20      69.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing
21 Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents
22 have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to
23 cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career,
24 livelihood, and emotional wellbeing.

25      70.    The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a
26 prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue
27 to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will

28

1   continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and

2   costs.

3        71.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this

4   Court.

5                                              **IX.**

6                              **FIFTH CAUSE OF ACTION**

7        **(Failure to Engage in the Interactive Process in Violation of the FEHA)**

8                **(On Behalf of Plaintiff Against All Defendants)**

9        72.     Plaintiff realleges and incorporates by reference paragraphs 1-71, inclusive, of this

10  Complaint as though fully set forth herein.

11       73.     California Government Code section 12940(n) makes it unlawful "[f]or an employer or

12  other entity covered by this part to fail to engage in a timely, good faith interactive process with the

13  employee or applicant to determine effective reasonable accommodations, if any, in response to a request

14  for reasonable accommodation by an employee or applicant with a known physical or mental disability

15  or known medical condition."

16       74.     California Government Code section 12926.1(e) states "The Legislature affirms the

17  importance of the interactive process between the applicant or employee and the employer in determining

18  a reasonable accommodation, as the requirement has been articulated by the Equal Employment

19  Opportunity Commission in its interpretive guidance of the Americans with Disability Act."

20       75.     As set forth in paragraphs 7-26 above, Plaintiff informed the Company of his disabilities

21  as well as his need for reasonable accommodations. Rather than engaging in a timely, good faith process

22  with Plaintiff, the Company seemingly appeared to accommodate Plaintiff by approving his requests for

23  leave, but later sabotaged his book of business, issued him unwarranted disciplinary actions, and

24  ultimately terminated his employment after her returned to work from two medical leaves of absence

25  and complained about unlawful retaliation.

26       76.     As a proximate result of the Company's conduct, Plaintiff has suffered and will continue

27  to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according

28

to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

77.    The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

78.    In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto.  Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

79.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

80.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

81.    The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue

COMPLAINT FOR DAMAGES

to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs.

82.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## X.

## SIXTH CAUSE OF ACTION

### (CFRA Retaliation)

### (On Behalf of Plaintiff Against All Defendants)

83.     Plaintiff realleges and incorporates by reference paragraphs 1-81, inclusive, of this Complaint as though fully set forth herein.

84.     At all times herein mentioned, the FEHA, Government Code sections 12900-12996, was in full force and effect and was binding on Defendant.  This included Government Code section 12945.2 *et seq.* which is commonly referred to as the California Family Rights Act ("CFRA").  CFRA requires that Defendant refrain from discriminating or retaliating against any employee based on that employee's need to take leave to tend to his or her own serious medical condition or having taken such leave (*see* Government Code §§ 12945.2 (a) and (l)).

85.     Pursuant to the CFRA, the Company was required to allow Plaintiff up to twelve (12) workweeks of leave for a qualifying leave, the right to preservation of benefits during the leave period, the right to reinstatement upon completion of the protected leave, and the prohibition against retaliation for exercising Plaintiff's rights.

86.     At the relevant times mentioned herein, Plaintiff was eligible to take leave under CFRA, as he was employed by the Company for at least a year and had worked more than 1250 hours in the immediately preceding 12 months and had not exhausted the twelve (12) workweeks of leave guaranteed by the CFRA.  Due to Plaintiff's serious medical conditions and/or physical disabilities, including, without limitation, his foot injury, hernias, and related conditions, he required continuing treatment and/or supervision by his treating physicians.

COMPLAINT FOR DAMAGES

87.     Plaintiff exercised his right to take CFRA leave by providing notice to the Company of his serious medical conditions and/or physical disabilities and the need for certain leave time.

88.     Plaintiff believes and thereon alleges that the Company retaliated against him because he exercised his right to take CFRA leave.  While Plaintiff had exhausted his CFRA leave as of the time of his termination, he believes that the Company targeted and later terminated him because of his taking leave time, including leave covered by the CFRA.

89.     As a proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

90.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents.  The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

91.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto.  Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

92.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

COMPLAINT FOR DAMAGES

the law and Plaintiff's rights.

93.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

94.     The CFRA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs.

95.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## XI.

## SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of California Labor Code section 1102.5)

### (On Behalf of Plaintiff Against All Defendants)

96.     Plaintiff realleges and incorporates by reference paragraphs 1-95, inclusive, of this Complaint as though fully set forth herein.

97.     California Labor Code section 1102.5, subdivision (b), make it unlawful for an employer to "retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance ... if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation ...."

98.     As set forth above in paragraphs 7-26 above, the Company abruptly terminated Plaintiff's

COMPLAINT FOR DAMAGES

employment shortly after Plaintiff complained about conduct which he reasonably believed violated California Government Code section 12940(m)(2) to multiple employees with the authority to investigate, discover, or correct the violation. The Company's conduct therefore constituted a retaliatory discharge in violation of California Labor Code section 1102.5(b).

99.     As a proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

100.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

101.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto. Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

102.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

103.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

COMPLAINT FOR DAMAGES

Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

104.    California Labor Code section 1102.5 provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs.

105.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## XII.

## EIGHTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

### (On Behalf of Plaintiff Against All Defendants)

106.    Plaintiff realleges and incorporates by reference paragraphs 1-105, inclusive, of this Complaint as though fully set forth herein.

107.    As set forth in paragraphs 7-26 above, the Company terminated Plaintiff's employment in violation of important and well-established public policies, as set forth in various state statutes and Constitutional provisions including, but not limited to, the FEHA, the CFRA, and the California Labor Code.

108.    As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

109.   The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

110.   In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto.  Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

111.   In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

112.   In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

113.   Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

COMPLAINT FOR DAMAGES

## XIII.

### PRAYER FOR RELIEF

1. For general damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

2. For special damages, according to proof on each cause of action for which such damages are available.

3. For compensatory damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

4. For punitive damages, according to proof on each cause of action for which such damages are available.

5. For declaratory and injunctive relief as appropriate.

6. For prejudgment interest and post-judgment interest according to law.

7. For reasonable attorneys' fees incurred in this action pursuant to the FEHA, the CFRA, California Labor Code § 1102.5, and California Code of Civil Procedure § 1021.5.

8. For costs of suit incurred in this action.

9. For such other and further relief that this tribunal deems proper and just.


Dated:  October 8, 2021                  RISE LAW FIRM, P.C.

                                         By: _____
                                         ELIOT J. RUSHOVICH
                                         LISA M. WATANABE-PEAGLER
                                         ELISSA A. WAIZMAN

                                         Attorneys for Plaintiff ANDREW KALLSEN

COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

Plaintiff ANDREW KALLSEN hereby demands a trial by jury on all causes of action alleged herein in the Complaint.

Dated:  October 8, 2021

RISE LAW FIRM, P.C.

By: _____
ELIOT J. RUSHOVICH
LISA M. WATANABE-PEAGLER
ELISSA A. WAIZMAN

Attorneys for Plaintiff ANDREW KALLSEN

COMPLAINT FOR DAMAGES

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                                            GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 7, 2021

Elissa Waizman
8383 Wilshire Boulevard Suite 315
Beverly Hills, California 90211

RE: **Notice to Complainant's Attorney**
DFEH Matter Number: 202110-15001907
Right to Sue: Kallsen / Office Depot, LLC

Dear Elissa Waizman:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

DFEH-ENF 80 RS

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                           GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 7, 2021

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 202110-15001907
Right to Sue: Kallsen / Office Depot, LLC

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

October 7, 2021

Andrew Kallsen
c/o Rise Law Firm, 8383 Wilshire Boulevard, Suite 315
Beverly Hills, California 90211

RE:  **Notice of Case Closure and Right to Sue**
     DFEH Matter Number: 202110-15001907
     Right to Sue: Kallsen / Office Depot, LLC

Dear Andrew Kallsen:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective October 7, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete. To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

DFEH-ENF 80 RS

STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Andrew Kallsen                                              DFEH No. 202110-15001907

                                    Complainant,

vs.

Office Depot, LLC
6600 N. Military Trail
Boca Raton, Florida 33496

                                    Respondents

---

**1.** Respondent **Office Depot, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Andrew Kallsen**, resides in the City of **Beverly Hills,** State of **California.**

**3.** Complainant alleges that on or about **April 22, 2021,** respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical or mental), family care or medical leave (cfra) and as a result of the discrimination was terminated, reprimanded, denied reasonable accommodation for a disability, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, requested or used family care or medical leave (cfra) and as a result was terminated, reprimanded, denied reasonable accommodation for a disability, denied work opportunities or assignments.

**Additional Complaint Details:** Plaintiff Andrew Kallsen ("Plaintiff") was employed by Office Depot, LLC (the "Company") for over 15 years in various sales positions. Plaintiff

-1-
*Complaint – DFEH No. 202110-15001907*

Date Filed: October 7, 2021

DFEH-ENF 80 RS

commenced his employment on or about November 21, 2005, as a large account hunter. Throughout his employment with the Company, Plaintiff performed so well that he received numerous positive performance reviews, bonuses, raises, and promotions. In or around 2008, Plaintiff developed a novel program to create workbooks of consumable content for school districts in the K-12 public sector. Thereafter, the Company implemented Plaintiff's program and promoted him to National Account Manager in the Company's copy and print division. While working in this role, Plaintiff became a subject matter expert in the K-12 public sector. In or around 2016, Plaintiff was promoted to Lead K-12 Instructional Solutions Consultant. The Company dissolved Plaintiff's team in 2018 and Plaintiff transitioned back to the copy and print division as a CPD Development Manager. Plaintiff worked in this position until the abrupt termination of his employment on or about April 22, 2021.

In or around January 2018, Plaintiff injured his left foot outside of work and was required to undergo surgery. Thereafter, Plaintiff began a short-term disability / CFRA leave of absence while he recovered from surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through in or around June 2018.

Prior to his leave, Plaintiff had accounts in California, Oregon, Washington, Nevada, and Arizona. Upon his return from leave, Plaintiff learned that the Company had reassigned some of the accounts in these regions to other members on his team. Plaintiff also received a batch of negative accounts which were previously managed by other members on his team. Nobody else on Plaintiff's team was given worse accounts at this time. As such, Plaintiff was forced to spend extra time working to keep up with his sales goals. Plaintiff also spent a large portion of his time securing business from and salvaging relationships with accounts that were no longer on his account list but would not have continued doing business with the Company without Plaintiff's involvement. Ultimately, Plaintiff was only able to achieve 90.4% of his sales targets. Nonetheless, Plaintiff endeavored to make the best of his 2019 book of business in light of the circumstances.

In Plaintiff's 2019 Annual Performance Review, the Company issued Plaintiff an overall rating of "Inconsistently Meets Expectations" noting that Plaintiff had fallen short in his marginal goal and rate. In the nearly 14 years that Plaintiff had worked for the Company he never received an overall rating below "Meets Expectations." Notably, the Company had restructured the way it tracked its book of business which resulted in an inaccurate reflection of Plaintiff's actual performance. In fact, the review stated that "These numbers are not final compensation numbers." Nevertheless, Plaintiff's performance rating was never changed once the compensation numbers were finalized.

In or around January 2020, Plaintiff underwent abdominal surgery for multiple hernias. Thereafter, Plaintiff began a second short-term disability / CFRA leave of absence while he recovered from his surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through on or about July 6, 2020.

Shortly before Plaintiff went on his medical leave of absence, Dan Bowen ("Bowen") became Director of Print Services and Plaintiff's new manager. Plaintiff only had one interaction with Bowen before taking his medical leave. When Plaintiff returned from leave,

*Complaint – DFEH No. 202110-15001907*

Date Filed: October 7, 2021

he learned that Bowen had divested him of all his accounts in Oregon, Washington, and Nevada, and reassigned them to other members on Plaintiff's team. Most of the accounts were ones that Plaintiff had brought in and worked to build during his employment with the Company. Bowen left Plaintiff with a small portion of accounts in Southern California and a few inactive accounts in Arizona, a shell of his former portfolio. Bowen also gave Plaintiff some of the worst accounts from his other team member's portfolios. Nobody else on Plaintiff's team was given worse accounts at this time and they all retained any accounts that were performing well.

Almost immediately thereafter, Plaintiff emailed Bowen to voice his concerns about his new accounts. Plaintiff went from maintaining a portfolio of accounts worth approximately $3,000,000 to maintaining a portfolio worth less than $100,000. This was problematic because Plaintiff required a minimum of $300,000 worth of business in order to reach his targets and receive a bonus. As such, Plaintiff complained to Bowen that he was unable to achieve his goals with these smaller and inactive accounts. Plaintiff proposed that he be reassigned some of his old accounts so that he could keep his head above water. Bowen replied that he was "working for Plaintiff" and would discuss Plaintiff's concerns with his boss, Robert Wheatley ("Wheatley"), Managing Director Print Services. Thereafter, Plaintiff repeatedly restated his concerns to Bowen during their bi-weekly one-on-ones, yet Bowen always gave Plaintiff same evasive response – that he was working to improve Plaintiff's accounts.

On or about August 25, 2020, Bowen issued Plaintiff a verbal warning concerning Plaintiff's ability to retain and grow business in his assigned accounts. Although Bowen had a background in sales, he had no prior experience working in the K-12 public sector. Thus, Plaintiff explained that due to the seasonality and cyclical nature of the K-12 business, some of the revenue from his accounts would be delayed. Plaintiff further pointed out that he had attempted to discuss the composition of his portfolio with Bowen on multiple occasions. For instance, Plaintiff had an account that was worth negative $250,000 even though there was an opportunity for $1,500,000 worth of business on the account before Plaintiff's leave – an opportunity the previous account manager had squandered. Plaintiff stated that he felt that he was being unfairly penalized for this loss even though he was not responsible for it. Plaintiff asked Bowen once again about the possibility of restoring some of his former accounts. Bowen indicated that he understood Plaintiff's concerns but gave Plaintiff the same run around – that he would speak with Wheatley and work to increase the value of Plaintiff's accounts. Notably, Plaintiff never previously received any verbal or written warnings pertaining to the ability to retain and grown business in his nearly fifteen years at the Company. To the contrary, Plaintiff was always in the top 10 compared to his chain of sales colleagues. In fact, during Plaintiff's employment with the Company, the program he created generated approximately $30,000,000 in revenue, $12,000,000 of which Plaintiff was directly responsible for bringing in.

On or about October 21, 2020, Plaintiff had a one-on-one conversation with Bowen wherein Bowen reiterated his previous concerns about Plaintiff's performance. Plaintiff once again reminded Bowen that he was unable to effectively grow and manage his assigned accounts given their size and/or negative status. In response, Bowen downplayed Plaintiff's concerns

-3-

Date Filed: October 7, 2021

DFEH-ENF 80 RS

by making comparisons to other team members without recognizing the difference between the seasonality of Plaintiff's business and the type of accounts he maintained. For instance, Bowen praised one of Plaintiff's colleagues for recently securing a $5,000.00 contract. Plaintiff explained to Bowen that his accounts, unlike most of his team members, were under government contracts with specific buying guidelines so he was contractually unable to secure certain contracts like they could. Further, the other team members were benefitting from relationships and contracts that Plaintiff was responsible for establishing. In fact, Plaintiff had previously forwarded Bowen emails from multiple former customers asking why Plaintiff was no longer assigned to their accounts. One former customer begged Plaintiff to come back because the new account manager did not have experience in the K-12 public sector nor an understanding of its business needs. Plaintiff therefore assisted the account manager with the back-to-school rush on the account (in addition to working on his own accounts) but did not receive any credit for his work.  Bowen once again vaguely stated that he would talk to Wheatley about Plaintiff's accounts but told Plaintiff that he needed to do his best with what he had.

Two weeks later, on or about November 3, 2020, Bowen issued Plaintiff a Letter of Concern (the "Letter"). The Letter stated that Bowen had concerns regarding Plaintiff's ability to execute certain areas central to Plaintiff's role and outlined several "Action Steps" for Plaintiff to work towards. Plaintiff was surprised given his previous communications with Bowen concerning the state of his accounts and seasonality and nature of his business – concepts Bowen struggled to grasp. Thereafter, Plaintiff reached out to HR and asked if he needed to sign the Letter because he did not believe it was an accurate representation of his performance given the circumstances. Plaintiff was informed that he did not need to sign the Letter, but he did need to work with his manager to remedy the purported issues. Plaintiff did not sign the Letter.

Around this same time, Plaintiff also escalated his complaints to Wheatley directly via email. Plaintiff complained that he was being treated unfairly because he was being held accountable for things that happened while he was on his medical leave. Plaintiff asked if Bowen and Wheatley were setting him up for failure since the business trends unequivocally showed that he would be unable to reach his goals with his current portfolio. Wheatley replied that everyone was being held account accountable for higher numbers, not just Plaintiff. In response, Plaintiff provided Wheatley with exact numbers and reason as to why the account reassignment was detrimental to his book of business. However, Wheatley never responded to Plaintiff's email.

In or around December 2020, Plaintiff emailed the Company's HR department regarding the Letter and Bowen and Wheatley's failure to address his concerns regarding his assigned accounts. Plaintiff complained that he was being treated unfairly because he was being held accountable for things that had happened on his medical leave. Plaintiff also asked why he was the only one on the team who did not have $300,000 worth of accounts when he was used to managing $3,000,000 worth of accounts. Thereafter, someone form HR contacted Plaintiff and stated that the Company was reviewing his grievances.

-4-

Thereafter, Bowen issued Plaintiff his 2020 Annual Performance Review with an overall rating of "Unsatisfactory Performance." Notably, Bowen wrote that Plaintiff was "Unsatisfactory' for all 4 quarters" in 2020 even though Plaintiff was on an approved medical leave of absence for the first 2 quarters of that year. Plaintiff therefore provided contextual feedback stating, "Unfor[tunately] I was on medical leave for half of 2020. When I returned I found that all of large pieces of business that I had sold and managed success[s]fully for years had been assigned to other reps in my absen[ce]. This was very unfair and has [a]ffected my income and earning potential greatly.  Since i was l[e]ft with o[n]ly small transactional business and one large negative account. This situation is still [a]ffecting me in 2021. I am currently working with HR and my manager [t]o resolve."

In light of Plaintiff's performance review, on or about January 4, 2020, Plaintiff sent a letter to HR complaining that he believed the reassignment of his account was "unfair and punitive done in retaliation for his long leave of absence." Plaintiff further stated that he had discussed the issue with Bowen several times to no avail and during his 2020 review it was explained to him that it "had been discussed at higher levels and it was determined that there would be no change" to his accounts. Plaintiff once again requested that his account list be restored as it was before his medical leave of absence in 2020.

In or around January 2021, Plaintiff learned that his HR complaint had been outsourced to a third-party attorney who represented the Company. During a phone call with the attorney, Plaintiff complained that he felt like he was being treated unfairly because of things that happened while he was on a medical leave. However, the attorney did not take Plaintiff's complaints seriously. He merely reviewed the Letter, stated that all the reasons Plaintiff was being disciplined were outlined therein, and informed Plaintiff that there was nothing he could do.

On or about February 19, 2021, Bowen issued Plaintiff a Performance Improvement Process ("PIP") Memorandum placing him on a 60-day improvement plan. Bowen alleged that Plaintiff had not demonstrated behavior in line with the "Action Steps" previously outlined in the Letter. Plaintiff informed Bowen that it was impossible to meet the expectations given his book of business. Bowen nevertheless instructed Plaintiff to submit his own "Action Plan" to address his purported performance issues. Plaintiff refused to sign the PIP because he still believed that he was being set up for failure.

Nonetheless, on March 17, 2021, Plaintiff submitted a Q1 Action Plan. Prior to submitting the final plan, Plaintiff had multiple conversations with Bowen to ensure it aligned with Bowen's expectations. During these conversations, Plaintiff made clear to Bowen that some of the expectations were unattainable due to the seasonality of the business and nature of the government contracts. However, Plaintiff stated that he would try to make progress. Plaintiff believed that Bowen was happy with the final plan.

Over the following few weeks, Plaintiff made progress pursuant to the action plan. In fact, Bowen recognized and commended Plaintiff's improvement during their weekly one-on-ones. Bowen told Plaintiff several times that his activity was "through the roof" and that he was "doing all the right things" (or words of similar import).

-5-

Date Filed: October 7, 2021

DFEH-ENF 80 RS

On or about April 22, 2021, Bowen and an HR representative from the Company collectively called Plaintiff and terminated his employment. Bowen claimed that Plaintiff was being terminated for performance but did not provide specific details. Plaintiff asked Bowen how termination was possible in light of the "Action Plan" they had created together and stated something to the effect of, "You know exactly what's happening here." Plaintiff meant that the Company was trying to get rid of him because of his medical leave. Bowen then informed Plaintiff that he could take the issue up with HR.

The Company discriminated against Plaintiff based on his physical disabilities (actual and/or perceived) and retaliated against him for requesting reasonable accommodations for those disabilities.  Among other things, the Company targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then terminating Plaintiff's employment after he complained about unlawful retaliation. Plaintiff further alleges that the Company interfered and retaliated against him for his disabilities, for requesting accommodation, and for complaining about unlawful retaliation, by unlawfully terminating his employment.

-6-

Complaint – DFEH No. 202110-15001907

Date Filed: October 7, 2021

DFEH-ENF 80 RS

VERIFICATION

I, **Elissa A. Waizman**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On October 7, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Beverly Hills, CA**

-7-

*Complaint – DFEH No. 202110-15001907*

Date Filed: October 7, 2021

DFEH-ENF 80 RS

# EXHIBIT "B"

 **CT Corporation**

**Service of Process Transmittal**
10/12/2021
CT Log Number 540402549

**TO:**     Nicole Deibel
The ODP Corporation
6600 N MILITARY TRL
BOCA RATON, FL 33496-2434

**RE:**     **Process Served in California**

**FOR:**    Office Depot, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: ANDREW KALLSEN, an individual // To: Office Depot, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 21STCV37287 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/12/2021 at 01:04 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/12/2021, Expected Purge Date: 10/17/2021 |
| | Image SOP |
| | Email Notification,  Legal Operations  LegalOperations@officedepot.com |
| | Email Notification,  Nicole Deibel  nicole.deibel@officedepot.com |
| | Email Notification,  Melissa Dinatale  melissa.dinatale@officedepot.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>866-401-8252<br>EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                     Tue, Oct 12, 2021

**Server Name:**              Jimmy Lizama


Entity Served                 OFFICE DEPOT, LLC

Case Number                   21STCV37287

Jurisdiction                  CA



# EXHIBIT "C"

electronically FILED by Superior Court of California, County of Los Angeles on 10/08/2021 04:42 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez, Deputy Clerk

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
OFFICE DEPOT, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ANDREW KALLSEN, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Stanley Mosk Courthouse<br>111 North Hill St.<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>21STCV37287 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eliot Rushovich, Lisa Watanabe-Peagler & Elissa A. Waizman, Rise Law Firm, PC
8383 Wilshire Boulevard, Suite 315, Beverly Hills, CA 90211; (310) 728-6588

| | | Sherri R. Carter Executive Officer / Clerk of Court | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | 10/08/2021 | Clerk, by ___ H. Flores-Hernandez<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* **OFFICE DEPOT, LLC, a Delaware Limited Liability Company**
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* Corporation Code: 17061 (Limited Liability Company)
4. ☐ by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Steven Kleifield

Electronically FILED by Superior Court of California, County of Los Angeles on 10/08/2021 04:42 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez, Deputy Clerk

**RISE LAW FIRM, P.C.**
ELIOT J. RUSHOVICH (SBN 252343)
LISA M. WATANABE-PEAGLER (SBN 258182)
ELISSA A. WAIZMAN (SBN 329959)
8383 Wilshire Boulevard, Suite 315
Beverly Hills, CA 90211
Telephone: (310) 728-6588
Facsimile:  (310) 728-6560
eliot@riselawfirm.com
lisa@riselawfirm.com
elissa@riselawfirm.com

Attorneys for Plaintiff
ANDREW KALLSEN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| ANDREW KALLSEN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICE DEPOT, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. **21STCV37287**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **DISCRIMINATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 _et seq._;**<br><br>2. **RETALIATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 _et seq._;**<br><br>3. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 et seq.;**<br><br>4. **FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 _et seq._;**<br><br>5. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE FEHA – CAL. GOVT. CODE § 12940 _et seq._;**<br><br>6. **RETALIATION IN VIOLATION OF THE CFRA;**<br><br>7. **RETALIATION IN VIOLATION OF CAL. LABOR CODE § 1102.5; AND**<br><br>8. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** |

Plaintiff Andrew Kallsen ("Plaintiff") hereby brings his Complaint for Damages against Defendants Office Depot, LLC (the "Company" or "Defendant") and Does 1 through 50, inclusive, and alleges the following based on knowledge as to himself and his known acts, and on information and belief as to all other matters:

## I.

## PARTIES

1.   At the relevant times mentioned herein, Plaintiff was employed by the Company. Plaintiff performed work for the Company in Los Angeles County, California. The unlawful conduct alleged herein occurred in whole or significant part in Los Angeles County, California.

2.   At the relevant times mentioned herein, the Company was a Delaware limited liability company with its headquarters in Boca Raton, Florida and conducting business in Los Angeles County.

3.   At the relevant times mentioned herein, the Company was an "employer" of Plaintiff, as such term is defined under the California Fair Employment and Housing Act (as amended), in that it regularly employed five (5) or more persons.  Therefore, the Company was subject to the FEHA.  In addition, at the relevant times mentioned herein, the Company was an "employer" of Plaintiff, as such term is defined under the California Family Rights Act ("CFRA") in that it had five (5) or more employees on the payroll during each of any 20 or more calendar weeks in the current calendar year or the preceding calendar year.  Therefore, the Company was subject to the CFRA

4.   Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of said Defendants when the same has been ascertained.  Each of the fictitiously named Defendants is responsible in some manner for the acts complained of herein.  Unless otherwise stated, all references to named Defendants shall include DOE Defendants as well.

///

- 1 -

COMPLAINT FOR DAMAGES

## II.

## JURISDICTION AND VENUE

5.     Jurisdiction and venue are proper in this Court because the unlawful conduct alleged to have been committed occurred in Los Angeles County and defendants were and/or are residents of Los Angeles County or are doing or did business in Los Angeles County. *See also* Govt. Code § 12965(b) (stating venue is appropriate in, *inter alia*, any county in which the unlawful conduct is alleged to have been committed or within the county of defendant's residence or principal office).

6.     The amount in controversy in this matter exceeds the sum of $25,000.00, exclusive of interest and costs.

## III.

## FACTUAL ALLEGATIONS

7.     Plaintiff was employed by the Company for over 15 years in various sales positions. Plaintiff commenced his employment on or about November 21, 2005, as a large account hunter. Throughout his employment with the Company, Plaintiff performed so well that he received numerous positive performance reviews, bonuses, raises, and promotions. In or around 2008, Plaintiff developed a novel program to create workbooks of consumable content for school districts in the K-12 public sector. Thereafter, the Company implemented Plaintiff's program and promoted him to National Account Manager in the Company's copy and print division. While working in this role, Plaintiff became a subject matter expert in the K-12 public sector. In or around 2016, Plaintiff was promoted to Lead K-12 Instructional Solutions Consultant. The Company dissolved Plaintiff's team in 2018 and Plaintiff transitioned back to the copy and print division as a CPD Development Manager. Plaintiff worked in this position until the abrupt termination of his employment on or about April 22, 2021.

8.     In or around January 2018, Plaintiff injured his left foot outside of work and was required to undergo surgery. Thereafter, Plaintiff began a short-term disability / CFRA leave of absence while he recovered from surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through in or around June 2018.

9.     Prior to his leave, Plaintiff had accounts in California, Oregon, Washington, Nevada, and

- 2 -

COMPLAINT FOR DAMAGES

Arizona. Upon his return from leave, Plaintiff learned that the Company had reassigned some of the accounts in these regions to other members on his team. Plaintiff also received a batch of negative accounts which were previously managed by other members on his team. Nobody else on Plaintiff's team was given worse accounts at this time. As such, Plaintiff was forced to spend extra time working to keep up with his sales goals. Plaintiff also spent a large portion of his time securing business from and salvaging relationships with accounts that were no longer on his account list but would not have continued doing business with the Company without Plaintiff's involvement. Ultimately, Plaintiff was only able to achieve 90.4% of his sales targets. Nonetheless, Plaintiff endeavored to make the best of his 2019 book of business in light of the circumstances.

10.     In Plaintiff's 2019 Annual Performance Review, the Company issued Plaintiff an overall rating of "Inconsistently Meets Expectations" noting that Plaintiff had fallen short in his marginal goal and rate. In the nearly 14 years that Plaintiff had worked for the Company he never received an overall rating below "Meets Expectations." Notably, the Company had restructured the way it tracked its book of business which resulted in an inaccurate reflection of Plaintiff's actual performance. In fact, the review stated that "These numbers are not final compensation numbers." Nevertheless, Plaintiff's performance rating was never changed once the compensation numbers were finalized.

11.     In or around January 2020, Plaintiff underwent abdominal surgery for multiple hernias. Thereafter, Plaintiff began a second short-term disability / CFRA leave of absence while he recovered from his surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through on or about July 6, 2020.

12.     Shortly before Plaintiff went on his medical leave of absence, Dan Bowen ("Bowen") became Director of Print Services and Plaintiff's new manager. Plaintiff only had one interaction with Bowen before taking his medical leave. When Plaintiff returned from leave, he learned that Bowen had divested him of all his accounts in Oregon, Washington, and Nevada, and reassigned them to other members on Plaintiff's team. Most of the accounts were ones that Plaintiff had brought in and worked to build during his employment with the Company. Bowen left Plaintiff with a small portion of accounts in Southern California and a few inactive accounts in Arizona, a shell of his former portfolio. Bowen

also gave Plaintiff some of the worst accounts from his other team member's portfolios. Nobody else on Plaintiff's team was given worse accounts at this time and they all retained any accounts that were performing well.

13.    Almost immediately thereafter, Plaintiff emailed Bowen to voice his concerns about his new accounts. Plaintiff went from maintaining a portfolio of accounts worth approximately $3,000,000 to maintaining a portfolio worth less than $100,000. This was problematic because Plaintiff required a minimum of $300,000 worth of business in order to reach his targets and receive a bonus.  As such, Plaintiff complained to Bowen that he was unable to achieve his goals with these smaller and inactive accounts. Plaintiff proposed that he be reassigned some of his old accounts so that he could keep his head above water. Bowen replied that he was "working for Plaintiff" and would discuss Plaintiff's concerns with his boss, Robert Wheatley ("Wheatley"), Managing Director Print Services. Thereafter, Plaintiff repeatedly restated his concerns to Bowen during their bi-weekly one-on-ones, yet Bowen always gave Plaintiff same evasive response – that he was working to improve Plaintiff's accounts.

14.    On or about August 25, 2020, Bowen issued Plaintiff a verbal warning concerning Plaintiff's ability to retain and grow business in his assigned accounts. Although Bowen had a background in sales, he had no prior experience working in the K-12 public sector. Thus, Plaintiff explained that due to the seasonality and cyclical nature of the K-12 business, some of the revenue from his accounts would be delayed. Plaintiff further pointed out that he had attempted to discuss the composition of his portfolio with Bowen on multiple occasions. For instance, Plaintiff had an account that was worth negative $250,000 even though there was an opportunity for $1,500,000 worth of business on the account before Plaintiff's leave – an opportunity the previous account manager had squandered. Plaintiff stated that he felt that he was being unfairly penalized for this loss even though he was not responsible for it. Plaintiff asked Bowen once again about the possibility of restoring some of his former accounts. Bowen indicated that he understood Plaintiff's concerns but gave Plaintiff the same run around – that he would speak with Wheatley and work to increase the value of Plaintiff's accounts. Notably, Plaintiff never previously received any verbal or written warnings pertaining to the ability to retain and grown business in his nearly fifteen years at the Company. To the contrary, Plaintiff was always in the

- 4 -

top 10 compared to his chain of sales colleagues. In fact, during Plaintiff's employment with the Company, the program he created generated approximately $30,000,000 in revenue, $12,000,000 of which Plaintiff was directly responsible for bringing in.

15.    On or about October 21, 2020, Plaintiff had a one-on-one conversation with Bowen wherein Bowen reiterated his previous concerns about Plaintiff's performance. Plaintiff once again reminded Bowen that he was unable to effectively grow and manage his assigned accounts given their size and/or negative status. In response, Bowen downplayed Plaintiff's concerns by making comparisons to other team members without recognizing the difference between the seasonality of Plaintiff's business and the type of accounts he maintained. For instance, Bowen praised one of Plaintiff's colleagues for recently securing a $5,000.00 contract. Plaintiff explained to Bowen that his accounts, unlike most of his team members, were under government contracts with specific buying guidelines so he was contractually unable to secure certain contracts like they could. Further, the other team members were benefitting from relationships and contracts that Plaintiff was responsible for establishing. In fact, Plaintiff had previously forwarded Bowen emails from multiple former customers asking why Plaintiff was no longer assigned to their accounts. One former customer begged Plaintiff to come back because the new account manager did not have experience in the K-12 public sector nor an understanding of its business needs. Plaintiff therefore assisted the account manager with the back-to-school rush on the account (in addition to working on his own accounts) but did not receive any credit for his work. Bowen once again vaguely stated that he would talk to Wheatley about Plaintiff's accounts but told Plaintiff that he needed to do his best with what he had.

16.    Two weeks later, on or about November 3, 2020, Bowen issued Plaintiff a Letter of Concern (the "Letter"). The Letter stated that Bowen had concerns regarding Plaintiff's ability to execute certain areas central to Plaintiff's role and outlined several "Action Steps" for Plaintiff to work towards. Plaintiff was surprised given his previous communications with Bowen concerning the state of his accounts and seasonality and nature of his business – concepts Bowen struggled to grasp. Thereafter, Plaintiff reached out to HR and asked if he needed to sign the Letter because he did not believe it was an accurate representation of his performance given the circumstances. Plaintiff was informed that he

did not need to sign the Letter, but he did need to work with his manager to remedy the purported issues. Plaintiff did not sign the Letter.

17.     Around this same time, Plaintiff also escalated his complaints to Wheatley directly via email. Plaintiff complained that he was being treated unfairly being because he was being held accountable for things that happened while he was on his medical leave. Plaintiff asked if Bowen and Wheatley were setting him up for failure since the business trends unequivocally showed that he would be unable to reach his goals with his current portfolio. Wheatley replied that everyone was being held account accountable for higher numbers, not just Plaintiff. In response, Plaintiff provided Wheatley with exact numbers and reason as to why the account reassignment was detrimental to his book of business. However, Wheatley never responded to Plaintiff's email.

18.     In or around December 2020, Plaintiff emailed the Company's HR department regarding the Letter and Bowen and Wheatley's failure to address his concerns regarding his assigned accounts. Plaintiff complained that he was being treated unfairly because he was being held accountable for things that had happened on his medical leave. Plaintiff also asked why he was the only one on the team who did not have $300,000 worth of accounts when he was used to managing $3,000,000 worth of accounts. Thereafter, someone form HR contacted Plaintiff and stated that the Company was reviewing his grievances.

19.     Thereafter, Bowen issued Plaintiff his 2020 Annual Performance Review with an overall rating of "Unsatisfactory Performance." Notably, Bowen wrote that Plaintiff was "Unsatisfactory' for all 4 quarters" in 2020 even though Plaintiff was on an approved medical leave of absence for the first 2 quarters of that year. Plaintiff therefore provided contextual feedback stating, "Unfor[tunately] I was on medical leave for half of 2020. When I returned I found that all of large pieces of business that I had sold and managed success[s]fully for years had been assigned to other reps in my absen[ce]. This was very unfair and has [a]ffected my income and earning potential greatly. Since i was l[e]ft with o[n]ly small transactional business and one large negative account. This situation is still [a]ffecting me in 2021. I am currently working with HR and my manager [t]o resolve."

20.     In light of Plaintiff's performance review, on or about January 4, 2020, Plaintiff sent a

- 6 -

COMPLAINT FOR DAMAGES

letter to HR complaining that he believed the reassignment of his account was "unfair and punitive done in retaliation for his long leave of absence." Plaintiff further stated that he had discussed the issue with Bowen several times to no avail and during his 2020 review it was explained to him that it "had been discussed at higher levels and it was determined that there would be no change" to his accounts. Plaintiff once again requested that his account list be restored as it was before his medical leave of absence in 2020.

21.     In or around January 2021, Plaintiff learned that his HR complaint had been outsourced to a third-party attorney who represented the Company. During a phone call with the attorney, Plaintiff complained that he felt like he was being treated unfairly because of things that happened while he was on a medical leave. However, the attorney did not take Plaintiff's complaints seriously. He merely reviewed the Letter, stated that all the reasons Plaintiff was being disciplined were outlined therein, and informed Plaintiff that there was nothing he could do.

22.     On or about February 19, 2021, Bowen issued Plaintiff a Performance Improvement Process ("PIP") Memorandum placing him on a 60-day improvement plan. Bowen alleged that Plaintiff had not demonstrated behavior in line with the "Action Steps" previously outlined in the Letter. Plaintiff informed Bowen that it was impossible to meet the expectations given his book of business. Bowen nevertheless instructed Plaintiff to submit his own "Action Plan" to address his purported performance issues. Plaintiff refused to sign the PIP because he still believed that he was being set up for failure.

23.     Nonetheless, on March 17, 2021, Plaintiff submitted a Q1 Action Plan. Prior to submitting the final plan, Plaintiff had multiple conversations with Bowen to ensure it aligned with Bowen's expectations. During these conversations, Plaintiff made clear to Bowen that some of the expectations were unattainable due to the seasonality of the business and nature of the government contracts. However, Plaintiff stated that he would try to make progress. Plaintiff believed that Bowen was happy with the final plan.

24.     Over the following few weeks, Plaintiff made progress pursuant to the action plan. In fact, Bowen recognized and commended Plaintiff's improvement during their weekly one-on-ones. Bowen told Plaintiff several times that his activity was "through the roof" and that he was "doing all the

- 7 -

right things" (or words of similar import).

25.     On or about April 22, 2021, Bowen and an HR representative from the Company collectively called Plaintiff and terminated his employment. Bowen claimed that Plaintiff was being terminated for performance but did not provide specific details. Plaintiff asked Bowen how termination was possible in light of the "Action Plan" they had created together and stated something to the effect of, "You know exactly what's happening here." Plaintiff meant that the Company was trying to get rid of him because of his medical leave. Bowen then informed Plaintiff that he could take the issue up with HR.

26.     The Company discriminated against Plaintiff based on his physical disabilities (actual and/or perceived) and retaliated against him for requesting reasonable accommodations for those disabilities.  Among other things, the Company targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then terminating Plaintiff's employment after he complained about unlawful retaliation. Plaintiff further alleges that the Company interfered and retaliated against him for his disabilities, for requesting accommodation, and for complaining about unlawful retaliation, by unlawfully terminating his employment.

### Managing Agents

27.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by its respective managing agents, including, but not limited to, Daniel Bowen and Robert Wheatley (collectively the "Managing Agents").  The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

28.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

retaliation based upon his physical disabilities and for requesting reasonable accommodations for those disabilities. Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, and placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

29.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

30.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

**IV.**

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

31.     Prior to the initiation of this lawsuit, Plaintiff filed a complaint against Defendant with the California Department of Fair Employment and Housing ("DFEH") pursuant to section 12900 *et seq.* of the California Government Code alleging the claims described in this Demand. On October 7, 2021 the DFEH issued a "right to sue" letter. True and correct copies of the administrative complaint and the "right to sue" letter are attached hereto collectively as **Exhibit A**. All conditions precedent to the institution of this lawsuit have been fulfilled. This action is filed within one year of the date that the DFEH issued its right to sue letters.

///

- 9 -

**V.**

**FIRST CAUSE OF ACTION**

**(Discrimination Based Upon Disability in Violation of the FEHA)**

**(On Behalf of Plaintiff Against All Defendants)**

32.     Plaintiff realleges and incorporates by reference paragraphs 1-31, inclusive, of this Complaint as though fully set forth herein.

33.     As set forth in paragraphs 7-26 above, the Company's supervisory and management employees discriminated against Plaintiff based on his physical disabilities (actual and/or perceived) in violation of the FEHA through numerous acts including, without limitation, divesting Plaintiff of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP, and ultimately terminating his employment after he requested and took two approved medical leaves of absence and complained about unlawful retaliation. Such acts constitute unlawful discrimination based in part on Plaintiff's disability in violation of California Government Code section 12940(a).

34.     As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

35.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

36.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

- 10 -

COMPLAINT FOR DAMAGES

retaliation based upon his disabilities and need for accommodation related thereto. Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

37.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

38.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

39.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions. Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and costs.

40.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

COMPLAINT FOR DAMAGES

# VI.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of the FEHA)

### (On Behalf of Plaintiff Against All Defendants)

41.     Plaintiff realleges and incorporates by reference paragraphs 1-40, inclusive, of this Complaint as though fully set forth herein.

42.     California Government Code section 12940(m)(2) makes it an unlawful employment practice for an employer to "retaliate or otherwise discriminate against a person for requesting an accommodation for disability, regardless of whether the request was granted."

43.     As set forth in paragraphs 7-26 above, Plaintiff was disabled (actual and/or perceived) while employed by the Company.  Plaintiff's physical disabilities (his foot injury and hernias) limited his ability to perform major life activities, including, without limitation, his ability to work (and he was perceived to have such limitation).  The Company was made aware of Plaintiff's disabilities because Plaintiff informed the Company and its management about such disabilities and asked for reasonable accommodations during his employment, *i.e.*, a medical leave of absence and subsequent extensions from January through June 2018 and a second medial leave and subsequent extensions from January through July 2020.

44.     The Company retaliated against Plaintiff based on his physical disabilities (actual and/or perceived) and for requesting reasonable accommodations for those disabilities in violation of the FEHA through numerous acts including, without limitation, divesting Plaintiff of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP, and ultimately terminating his employment after he requested and took two approved medical leaves of absence and complained about unlawful retaliation.

45.     As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue,

1 | and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

2 | 46.   The Company's conduct, as described in paragraphs 7-26 above, was performed or

3 | ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a

4 | substantial portion of the Company's business operations, and each exercised substantial discretionary

5 | authority over vital aspects of such operations including making significant decisions that affect the

6 | company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive

7 | conduct that justifies an award of punitive damages.

8 | 47.   In committing the foregoing acts as set forth above in paragraphs 7-26 above, the

9 | Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

10 | retaliation based upon his disabilities and need for accommodation related thereto.  Among other things,

11 | the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of

12 | absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair

13 | disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's

14 | employment after he complained about unlawful retaliation.

15 | 48.   In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

16 | Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for

17 | his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

18 | the law and Plaintiff's rights.

19 | 49.   In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

20 | Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents

21 | have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to

22 | cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career,

23 | livelihood, and emotional wellbeing.

24 | 50.   The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a

25 | prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue

26 | to employ attorneys for the initiation and prosecution of this action.   Plaintiff has incurred and will

27 | continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and

28 |

COMPLAINT FOR DAMAGES

costs.

51.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## VII.

## THIRD CAUSE OF ACTION

**(Failure to Prevent Discrimination and Retaliation in Violation of the FEHA)**

**(On Behalf of Plaintiff Against All Defendants)**

52.     Plaintiff realleges and incorporates by reference paragraphs 1-51, inclusive, of this Complaint as though fully set forth herein.

53.     California Government Code section 12940(k) makes it an unlawful employment practice for an employer to "fail to take all reasonable steps to prevent discrimination ... from occurring." This provision also makes it unlawful for an employer to fail to prevent retaliation. *See, e.g., Ortiz v. Georgia Pacific*, 973 F. Supp. 2d 1162, 1184 (E.D. Cal. 2013) (citing *Taylor v. City of Los Angeles Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1240 (2006)).   The Company violated this provision by failing to prevent discrimination and retaliation against Plaintiff, including those acts described in paragraphs 7-26 above. Additionally, the Company knew or should have known of the discrimination and retaliation against Plaintiff yet failed to prevent such conduct or take any prompt or adequate remedial action.

54.     As a proximate result of the Company's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

55.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the

- 14 -

COMPLAINT FOR DAMAGES

1   company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive

2   conduct that justifies an award of punitive damages.

3       56.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the

4   Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

5   retaliation based upon his disabilities and need for accommodation related thereto.  Among other things,

6   the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of

7   absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair

8   disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's

9   employment after he complained about unlawful retaliation.

10      57.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

11  Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for

12  his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

13  the law and Plaintiff's rights.

14      58.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

15  Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents

16  have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to

17  cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career,

18  livelihood, and emotional wellbeing.

19      59.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a

20  prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue

21  to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will

22  continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and

23  costs.

24      60.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this

25  Court.

26  ///

27

28

COMPLAINT FOR DAMAGES

## VIII.

### FOURTH CAUSE OF ACTION

**(Failure to Accommodate Disability in Violation of the FEHA)**

**(On Behalf of Plaintiff Against All Defendants)**

61.     Plaintiff realleges and incorporates by reference paragraphs 1-60, inclusive, of this Complaint as though fully set forth herein.

62.     California Government Code section 12940(m) makes it unlawful "[f]or an employer or other entity . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

63.     As set forth in paragraphs 7-26 above, Plaintiff was disabled (actual and/or perceived) while employed by the Company.  Plaintiff's physical disabilities (his foot injury and hernias) limited his ability to perform major life activities, including, without limitation, his ability to work (and he was perceived to have such limitation).  The Company was made aware of Plaintiff's disability because Plaintiff informed the Company and its management about such disability and asked for reasonable accommodations during his employment, *i.e.*, a medical leave of absence and subsequent extensions from January through June 2018 and a second medial leave and subsequent extensions from January through July 2020.

64.     As set forth in paragraphs 7-26 above, Plaintiff sought reasonable accommodations for his disabilities. The Company seemingly appeared to accommodate Plaintiff by approving his requests for leave, but later sabotaged his book of business, issued him unwarranted disciplinary actions, and ultimately terminated his employment after her returned to work from two medical leaves of absence and complained about unlawful retaliation.  The Company cannot demonstrate that Plaintiff's reasonable accommodations would have imposed an undue hardship on the operation of its business, and therefore the Company's failure to accommodate Plaintiff was unlawful.

65.     As a proximate result of the Company's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including

COMPLAINT FOR DAMAGES

1   nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain,

2   discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

3        66.    The Company's conduct, as described in paragraphs 7-26 above, was performed or

4   ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a

5   substantial portion of the Company's business operations, and each exercised substantial discretionary

6   authority over vital aspects of such operations including making significant decisions that affect the

7   company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive

8   conduct that justifies an award of punitive damages.

9        67.    In committing the foregoing acts as set forth above in paragraphs 7-26 above, the

10  Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and

11  retaliation based upon his disabilities and need for accommodation related thereto.  Among other things,

12  the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of

13  absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair

14  disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's

15  employment after he complained about unlawful retaliation.

16       68.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

17  Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for

18  his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

19  the law and Plaintiff's rights.

20       69.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

21  Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents

22  have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to

23  cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career,

24  livelihood, and emotional wellbeing.

25       70.    The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a

26  prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue

27  to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will

28

- 17 -

COMPLAINT FOR DAMAGES

1   continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and
2   costs.

3       71.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this
4   Court.

5   ### IX.

6   ### FIFTH CAUSE OF ACTION

7   **(Failure to Engage in the Interactive Process in Violation of the FEHA)**

8   **(On Behalf of Plaintiff Against All Defendants)**

9       72.    Plaintiff realleges and incorporates by reference paragraphs 1-71, inclusive, of this
10   Complaint as though fully set forth herein.

11       73.    California Government Code section 12940(n) makes it unlawful "[f]or an employer or
12   other entity covered by this part to fail to engage in a timely, good faith interactive process with the
13   employee or applicant to determine effective reasonable accommodations, if any, in response to a request
14   for reasonable accommodation by an employee or applicant with a known physical or mental disability
15   or known medical condition."

16       74.    California Government Code section 12926.1(e) states "The Legislature affirms the
17   importance of the interactive process between the applicant or employee and the employer in determining
18   a reasonable accommodation, as the requirement has been articulated by the Equal Employment
19   Opportunity Commission in its interpretive guidance of the Americans with Disability Act."

20       75.    As set forth in paragraphs 7-26 above, Plaintiff informed the Company of his disabilities
21   as well as his need for reasonable accommodations. Rather than engaging in a timely, good faith process
22   with Plaintiff, the Company seemingly appeared to accommodate Plaintiff by approving his requests for
23   leave, but later sabotaged his book of business, issued him unwarranted disciplinary actions, and
24   ultimately terminated his employment after her returned to work from two medical leaves of absence
25   and complained about unlawful retaliation.

26       76.    As a proximate result of the Company's conduct, Plaintiff has suffered and will continue
27   to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according

28

to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nightmares, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

77.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

78.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto.  Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

79.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

80.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

81.     The FEHA provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue

COMPLAINT FOR DAMAGES

1   to employ attorneys for the initiation and prosecution of this action. Plaintiff has incurred and will

2   continue to incur attorneys' fees and costs herein. Plaintiff is entitled to an award of attorneys' fees and

3   costs.

4        82.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this

5   Court.

6                                   **X.**

7                    **SIXTH CAUSE OF ACTION**

8                    **(CFRA Retaliation)**

9        **(On Behalf of Plaintiff Against All Defendants)**

10       83.    Plaintiff realleges and incorporates by reference paragraphs 1-81, inclusive, of this

11   Complaint as though fully set forth herein.

12       84.    At all times herein mentioned, the FEHA, Government Code sections 12900-12996, was

13   in full force and effect and was binding on Defendant. This included Government Code section 12945.2

14   *et seq.* which is commonly referred to as the California Family Rights Act ("CFRA"). CFRA requires

15   that Defendant refrain from discriminating or retaliating against any employee based on that employee's

16   need to take leave to tend to his or her own serious medical condition or having taken such leave (*see*

17   Government Code §§ 12945.2 (a) and (l)).

18       85.    Pursuant to the CFRA, the Company was required to allow Plaintiff up to twelve (12)

19   workweeks of leave for a qualifying leave, the right to preservation of benefits during the leave period,

20   the right to reinstatement upon completion of the protected leave, and the prohibition against retaliation

21   for exercising Plaintiff's rights.

22       86.    At the relevant times mentioned herein, Plaintiff was eligible to take leave under CFRA,

23   as he was employed by the Company for at least a year and had worked more than 1250 hours in the

24   immediately preceding 12 months and had not exhausted the twelve (12) workweeks of leave guaranteed

25   by the CFRA. Due to Plaintiff's serious medical conditions and/or physical disabilities, including,

26   without limitation, his foot injury, hernias, and related conditions, he required continuing treatment

27   and/or supervision by his treating physicians.

28

COMPLAINT FOR DAMAGES

87.     Plaintiff exercised his right to take CFRA leave by providing notice to the Company of his serious medical conditions and/or physical disabilities and the need for certain leave time.

88.     Plaintiff believes and thereon alleges that the Company retaliated against him because he exercised his right to take CFRA leave.  While Plaintiff had exhausted his CFRA leave as of the time of his termination, he believes that the Company targeted and later terminated him because of his taking leave time, including leave covered by the CFRA.

89.     As a proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

90.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents.  The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

91.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto.  Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

92.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for

COMPLAINT FOR DAMAGES

1   the law and Plaintiff's rights.

2        93.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

3   Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents

4   have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to

5   cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career,

6   livelihood, and emotional wellbeing.

7        94.    The CFRA provides for an award of reasonable attorneys' fees and costs incurred by a

8   prevailing Plaintiff in an action brought under its provisions.  Plaintiff has employed and will continue

9   to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will

10   continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and

11   costs.

12        95.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this

13   Court.

14   <div align="center">**XI.**</div>

15   <div align="center">**SEVENTH CAUSE OF ACTION**</div>

16   <div align="center">**(Retaliation in Violation of California Labor Code section 1102.5)**</div>

17   <div align="center">**(On Behalf of Plaintiff Against All Defendants)**</div>

18        96.    Plaintiff realleges and incorporates by reference paragraphs 1-95, inclusive, of this

19   Complaint as though fully set forth herein.

20        97.    California Labor Code section 1102.5, subdivision (b), make it unlawful for an employer

21   to "retaliate against an employee for disclosing information, or because the employer believes that the

22   employee disclosed or may disclose information, to a government or law enforcement agency, to a person

23   with authority over the employee or another employee who has the authority to investigate, discover, or

24   correct the violation or noncompliance ... if the employee has reasonable cause to believe that the

25   information discloses a violation of state or federal statute, or a violation of or noncompliance with a

26   local, state, or federal rule or regulation ...."

27        98.    As set forth above in paragraphs 7-26 above, the Company abruptly terminated Plaintiff's

28

COMPLAINT FOR DAMAGES

employment shortly after Plaintiff complained about conduct which he reasonably believed violated California Government Code section 12940(m)(2) to multiple employees with the authority to investigate, discover, or correct the violation. The Company's conduct therefore constituted a retaliatory discharge in violation of California Labor Code section 1102.5(b).

99.     As a proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Plaintiff's damages will be ascertained at trial.

100.     The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies. The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

101.     In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto. Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

102.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

103.     In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing

Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

104.   California Labor Code section 1102.5 provides for an award of reasonable attorneys' fees and costs incurred by a prevailing Plaintiff in an action brought under its provisions.   Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.   Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.   Plaintiff is entitled to an award of attorneys' fees and costs.

105.   Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## XII.

## EIGHTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

### (On Behalf of Plaintiff Against All Defendants)

106.   Plaintiff realleges and incorporates by reference paragraphs 1-105, inclusive, of this Complaint as though fully set forth herein.

107.   As set forth in paragraphs 7-26 above, the Company terminated Plaintiff's employment in violation of important and well-established public policies, as set forth in various state statutes and Constitutional provisions including, but not limited to, the FEHA, the CFRA, and the California Labor Code.

108.   As a proximate result of the Company's conduct, Plaintiff suffered and continues to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof. Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.   The amount of Plaintiff's damages will be ascertained at trial.

109.    The Company's conduct, as described in paragraphs 7-26 above, was performed or ratified by the Managing Agents. The Managing Agents were each responsible for overseeing a substantial portion of the Company's business operations, and each exercised substantial discretionary authority over vital aspects of such operations including making significant decisions that affect the company's internal policies.  The Managing Agents engaged in malicious, fraudulent, and oppressive conduct that justifies an award of punitive damages.

110.    In committing the foregoing acts as set forth above in paragraphs 7-26 above, the Managing Agents willfully disregarded Plaintiff's right to be free from unlawful discrimination and retaliation based upon his disabilities and need for accommodation related thereto.  Among other things, the Managing Agents targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then abruptly terminated Plaintiff's employment after he complained about unlawful retaliation.

111.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents acted despicably and subjected Plaintiff to cruel and unjust hardship in conscious disregard for his rights under California law. The Managing Agents' conduct demonstrates a callous indifference for the law and Plaintiff's rights.

112.    In committing the foregoing acts as set forth in paragraphs 7-26 above, the Managing Agents intended to cause emotional and financial injury to Plaintiff. Specifically, the Managing Agents have engaged in a campaign of discrimination and the repudiation of Plaintiff's rights with the intent to cause him severe emotional distress or at least without regard for the consequences on Plaintiff's career, livelihood, and emotional wellbeing.

113.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

///

# XIII.

## **PRAYER FOR RELIEF**

1.      For general damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

2.      For special damages, according to proof on each cause of action for which such damages are available.

3.      For compensatory damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

4.      For punitive damages, according to proof on each cause of action for which such damages are available.

5.      For declaratory and injunctive relief as appropriate.

6.      For prejudgment interest and post-judgment interest according to law.

7.      For reasonable attorneys' fees incurred in this action pursuant to the FEHA, the CFRA, California Labor Code § 1102.5, and California Code of Civil Procedure § 1021.5.

8.      For costs of suit incurred in this action.

9.      For such other and further relief that this tribunal deems proper and just.


Dated:  October 8, 2021                    RISE LAW FIRM, P.C.


                                           By:  _____
                                                ELIOT J. RUSHOVICH
                                                LISA M. WATANABE-PEAGLER
                                                ELISSA A. WAIZMAN

                                           Attorneys for Plaintiff ANDREW KALLSEN

- 26 -

COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

Plaintiff ANDREW KALLSEN hereby demands a trial by jury on all causes of action alleged herein in the Complaint.

Dated: October 8, 2021

RISE LAW FIRM, P.C.

By: _____
ELIOT J. RUSHOVICH
LISA M. WATANABE-PEAGLER
ELISSA A. WAIZMAN

Attorneys for Plaintiff ANDREW KALLSEN

COMPLAINT FOR DAMAGES

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                     GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                          KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 7, 2021

Elissa Waizman
8383 Wilshire Boulevard Suite 315
Beverly Hills, California 90211

RE:   **Notice to Complainant's Attorney**
      DFEH Matter Number: 202110-15001907
      Right to Sue: Kallsen / Office Depot, LLC

Dear Elissa Waizman:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

DFEH-ENF 80 RS

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                        GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                          KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 7, 2021

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202110-15001907
      Right to Sue: Kallsen / Office Depot, LLC

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                      GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 7, 2021

Andrew Kallsen
c/o Rise Law Firm, 8383 Wilshire Boulevard, Suite 315
Beverly Hills, California 90211

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202110-15001907
      Right to Sue: Kallsen / Office Depot, LLC

Dear Andrew Kallsen:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective October 7, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete.  To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Andrew Kallsen                                          DFEH No. 202110-15001907

                              Complainant,

vs.

Office Depot, LLC
6600 N. Military Trail
Boca Raton, Florida 33496

                              Respondents
_____

**1.** Respondent **Office Depot, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Andrew Kallsen**, resides in the City of **Beverly Hills,** State of **California.**

**3.** Complainant alleges that on or about **April 22, 2021,** respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical or mental), family care or medical leave (cfra) and as a result of the discrimination was terminated, reprimanded, denied reasonable accommodation for a disability, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, requested or used family care or medical leave (cfra) and as a result was terminated, reprimanded, denied reasonable accommodation for a disability, denied work opportunities or assignments.

**Additional Complaint Details:** Plaintiff Andrew Kallsen ("Plaintiff") was employed by Office Depot, LLC (the "Company") for over 15 years in various sales positions. Plaintiff

-1-

Date Filed: October 7, 2021

DFEH-ENF 80 RS

commenced his employment on or about November 21, 2005, as a large account hunter. Throughout his employment with the Company, Plaintiff performed so well that he received numerous positive performance reviews, bonuses, raises, and promotions. In or around 2008, Plaintiff developed a novel program to create workbooks of consumable content for school districts in the K-12 public sector. Thereafter, the Company implemented Plaintiff's program and promoted him to National Account Manager in the Company's copy and print division. While working in this role, Plaintiff became a subject matter expert in the K-12 public sector. In or around 2016, Plaintiff was promoted to Lead K-12 Instructional Solutions Consultant. The Company dissolved Plaintiff's team in 2018 and Plaintiff transitioned back to the copy and print division as a CPD Development Manager. Plaintiff worked in this position until the abrupt termination of his employment on or about April 22, 2021.

In or around January 2018, Plaintiff injured his left foot outside of work and was required to undergo surgery. Thereafter, Plaintiff began a short-term disability / CFRA leave of absence while he recovered from surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through in or around June 2018.

Prior to his leave, Plaintiff had accounts in California, Oregon, Washington, Nevada, and Arizona. Upon his return from leave, Plaintiff learned that the Company had reassigned some of the accounts in these regions to other members on his team. Plaintiff also received a batch of negative accounts which were previously managed by other members on his team. Nobody else on Plaintiff's team was given worse accounts at this time. As such, Plaintiff was forced to spend extra time working to keep up with his sales goals. Plaintiff also spent a large portion of his time securing business from and salvaging relationships with accounts that were no longer on his account list but would not have continued doing business with the Company without Plaintiff's involvement. Ultimately, Plaintiff was only able to achieve 90.4% of his sales targets. Nonetheless, Plaintiff endeavored to make the best of his 2019 book of business in light of the circumstances.

In Plaintiff's 2019 Annual Performance Review, the Company issued Plaintiff an overall rating of "Inconsistently Meets Expectations" noting that Plaintiff had fallen short in his marginal goal and rate. In the nearly 14 years that Plaintiff had worked for the Company he never received an overall rating below "Meets Expectations." Notably, the Company had restructured the way it tracked its book of business which resulted in an inaccurate reflection of Plaintiff's actual performance. In fact, the review stated that "These numbers are not final compensation numbers." Nevertheless, Plaintiff's performance rating was never changed once the compensation numbers were finalized.

In or around January 2020, Plaintiff underwent abdominal surgery for multiple hernias. Thereafter, Plaintiff began a second short-term disability / CFRA leave of absence while he recovered from his surgery. Plaintiff was placed off work completely on a temporary basis and remained on leave from in or around January through on or about July 6, 2020.

Shortly before Plaintiff went on his medical leave of absence, Dan Bowen ("Bowen") became Director of Print Services and Plaintiff's new manager. Plaintiff only had one interaction with Bowen before taking his medical leave. When Plaintiff returned from leave,

Date Filed: October 7, 2021

DFEH-ENF 80 RS

he learned that Bowen had divested him of all his accounts in Oregon, Washington, and Nevada, and reassigned them to other members on Plaintiff's team. Most of the accounts were ones that Plaintiff had brought in and worked to build during his employment with the Company. Bowen left Plaintiff with a small portion of accounts in Southern California and a few inactive accounts in Arizona, a shell of his former portfolio. Bowen also gave Plaintiff some of the worst accounts from his other team member's portfolios. Nobody else on Plaintiff's team was given worse accounts at this time and they all retained any accounts that were performing well.

Almost immediately thereafter, Plaintiff emailed Bowen to voice his concerns about his new accounts. Plaintiff went from maintaining a portfolio of accounts worth approximately $3,000,000 to maintaining a portfolio worth less than $100,000. This was problematic because Plaintiff required a minimum of $300,000 worth of business in order to reach his targets and receive a bonus.  As such, Plaintiff complained to Bowen that he was unable to achieve his goals with these smaller and inactive accounts. Plaintiff proposed that he be reassigned some of his old accounts so that he could keep his head above water. Bowen replied that he was "working for Plaintiff" and would discuss Plaintiff's concerns with his boss, Robert Wheatley ("Wheatley"), Managing Director Print Services. Thereafter, Plaintiff repeatedly restated his concerns to Bowen during their bi-weekly one-on-ones, yet Bowen always gave Plaintiff same evasive response – that he was working to improve Plaintiff's accounts.

On or about August 25, 2020, Bowen issued Plaintiff a verbal warning concerning Plaintiff's ability to retain and grow business in his assigned accounts. Although Bowen had a background in sales, he had no prior experience working in the K-12 public sector. Thus, Plaintiff explained that due to the seasonality and cyclical nature of the K-12 business, some of the revenue from his accounts would be delayed. Plaintiff further pointed out that he had attempted to discuss the composition of his portfolio with Bowen on multiple occasions. For instance, Plaintiff had an account that was worth negative $250,000 even though there was an opportunity for $1,500,000 worth of business on the account before Plaintiff's leave – an opportunity the previous account manager had squandered. Plaintiff stated that he felt that he was being unfairly penalized for this loss even though he was not responsible for it. Plaintiff asked Bowen once again about the possibility of restoring some of his former accounts. Bowen indicated that he understood Plaintiff's concerns but gave Plaintiff the same run around – that he would speak with Wheatley and work to increase the value of Plaintiff's accounts. Notably, Plaintiff never previously received any verbal or written warnings pertaining to the ability to retain and grown business in his nearly fifteen years at the Company. To the contrary, Plaintiff was always in the top 10 compared to his chain of sales colleagues. In fact, during Plaintiff's employment with the Company, the program he created generated approximately $30,000,000 in revenue, $12,000,000 of which Plaintiff was directly responsible for bringing in.

On or about October 21, 2020, Plaintiff had a one-on-one conversation with Bowen wherein Bowen reiterated his previous concerns about Plaintiff's performance. Plaintiff once again reminded Bowen that he was unable to effectively grow and manage his assigned accounts given their size and/or negative status. In response, Bowen downplayed Plaintiff's concerns

-3-

Date Filed: October 7, 2021

DFEH-ENF 80 RS

by making comparisons to other team members without recognizing the difference between the seasonality of Plaintiff's business and the type of accounts he maintained. For instance, Bowen praised one of Plaintiff's colleagues for recently securing a $5,000.00 contract. Plaintiff explained to Bowen that his accounts, unlike most of his team members, were under government contracts with specific buying guidelines so he was contractually unable to secure certain contracts like they could. Further, the other team members were benefitting from relationships and contracts that Plaintiff was responsible for establishing. In fact, Plaintiff had previously forwarded Bowen emails from multiple former customers asking why Plaintiff was no longer assigned to their accounts. One former customer begged Plaintiff to come back because the new account manager did not have experience in the K-12 public sector nor an understanding of its business needs. Plaintiff therefore assisted the account manager with the back-to-school rush on the account (in addition to working on his own accounts) but did not receive any credit for his work.  Bowen once again vaguely stated that he would talk to Wheatley about Plaintiff's accounts but told Plaintiff that he needed to do his best with what he had.

Two weeks later, on or about November 3, 2020, Bowen issued Plaintiff a Letter of Concern (the "Letter"). The Letter stated that Bowen had concerns regarding Plaintiff's ability to execute certain areas central to Plaintiff's role and outlined several "Action Steps" for Plaintiff to work towards. Plaintiff was surprised given his previous communications with Bowen concerning the state of his accounts and seasonality and nature of his business – concepts Bowen struggled to grasp. Thereafter, Plaintiff reached out to HR and asked if he needed to sign the Letter because he did not believe it was an accurate representation of his performance given the circumstances. Plaintiff was informed that he did not need to sign the Letter, but he did need to work with his manager to remedy the purported issues. Plaintiff did not sign the Letter.

Around this same time, Plaintiff also escalated his complaints to Wheatley directly via email. Plaintiff complained that he was being treated unfairly because he was being held accountable for things that happened while he was on his medical leave. Plaintiff asked if Bowen and Wheatley were setting him up for failure since the business trends unequivocally showed that he would be unable to reach his goals with his current portfolio. Wheatley replied that everyone was being held account accountable for higher numbers, not just Plaintiff. In response, Plaintiff provided Wheatley with exact numbers and reason as to why the account reassignment was detrimental to his book of business. However, Wheatley never responded to Plaintiff's email.

In or around December 2020, Plaintiff emailed the Company's HR department regarding the Letter and Bowen and Wheatley's failure to address his concerns regarding his assigned accounts. Plaintiff complained that he was being treated unfairly because he was being held accountable for things that had happened on his medical leave. Plaintiff also asked why he was the only one on the team who did not have $300,000 worth of accounts when he was used to managing $3,000,000 worth of accounts. Thereafter, someone form HR contacted Plaintiff and stated that the Company was reviewing his grievances.

-4-

Date Filed: October 7, 2021

DFEH-ENF 80 RS

Thereafter, Bowen issued Plaintiff his 2020 Annual Performance Review with an overall rating of "Unsatisfactory Performance." Notably, Bowen wrote that Plaintiff was "Unsatisfactory' for all 4 quarters" in 2020 even though Plaintiff was on an approved medical leave of absence for the first 2 quarters of that year. Plaintiff therefore provided contextual feedback stating, "Unfor[tunately] I was on medical leave for half of 2020. When I returned I found that all of large pieces of business that I had sold and managed success[s]fully for years had been assigned to other reps in my absen[ce]. This was very unfair and has [a]ffected my income and earning potential greatly.  Since i was l[e]ft with o[n]ly small transactional business and one large negative account. This situation is still [a]ffecting me in 2021. I am currently working with HR and my manager [t]o resolve."

In light of Plaintiff's performance review, on or about January 4, 2020, Plaintiff sent a letter to HR complaining that he believed the reassignment of his account was "unfair and punitive done in retaliation for his long leave of absence." Plaintiff further stated that he had discussed the issue with Bowen several times to no avail and during his 2020 review it was explained to him that it "had been discussed at higher levels and it was determined that there would be no change" to his accounts. Plaintiff once again requested that his account list be restored as it was before his medical leave of absence in 2020.

In or around January 2021, Plaintiff learned that his HR complaint had been outsourced to a third-party attorney who represented the Company. During a phone call with the attorney, Plaintiff complained that he felt like he was being treated unfairly because of things that happened while he was on a medical leave. However, the attorney did not take Plaintiff's complaints seriously. He merely reviewed the Letter, stated that all the reasons Plaintiff was being disciplined were outlined therein, and informed Plaintiff that there was nothing he could do.

On or about February 19, 2021, Bowen issued Plaintiff a Performance Improvement Process ("PIP") Memorandum placing him on a 60-day improvement plan. Bowen alleged that Plaintiff had not demonstrated behavior in line with the "Action Steps" previously outlined in the Letter. Plaintiff informed Bowen that it was impossible to meet the expectations given his book of business. Bowen nevertheless instructed Plaintiff to submit his own "Action Plan" to address his purported performance issues. Plaintiff refused to sign the PIP because he still believed that he was being set up for failure.

Nonetheless, on March 17, 2021, Plaintiff submitted a Q1 Action Plan. Prior to submitting the final plan, Plaintiff had multiple conversations with Bowen to ensure it aligned with Bowen's expectations. During these conversations, Plaintiff made clear to Bowen that some of the expectations were unattainable due to the seasonality of the business and nature of the government contracts. However, Plaintiff stated that he would try to make progress. Plaintiff believed that Bowen was happy with the final plan.

Over the following few weeks, Plaintiff made progress pursuant to the action plan. In fact, Bowen recognized and commended Plaintiff's improvement during their weekly one-on-ones. Bowen told Plaintiff several times that his activity was "through the roof" and that he was "doing all the right things" (or words of similar import).

-5-

*Complaint – DFEH No. 202110-15001907*

Date Filed: October 7, 2021

DFEH-ENF 80 RS

On or about April 22, 2021, Bowen and an HR representative from the Company collectively called Plaintiff and terminated his employment. Bowen claimed that Plaintiff was being terminated for performance but did not provide specific details. Plaintiff asked Bowen how termination was possible in light of the "Action Plan" they had created together and stated something to the effect of, "You know exactly what's happening here." Plaintiff meant that the Company was trying to get rid of him because of his medical leave. Bowen then informed Plaintiff that he could take the issue up with HR.

The Company discriminated against Plaintiff based on his physical disabilities (actual and/or perceived) and retaliated against him for requesting reasonable accommodations for those disabilities.  Among other things, the Company targeted Plaintiff after he requested and took two approved medical leaves of absence by divesting him of business opportunities, sabotaging his book of business, issuing him unfair disciplinary actions, placing him on an unwarranted PIP and then terminating Plaintiff's employment after he complained about unlawful retaliation. Plaintiff further alleges that the Company interfered and retaliated against him for his disabilities, for requesting accommodation, and for complaining about unlawful retaliation, by unlawfully terminating his employment.

-6-

*Complaint – DFEH No. 202110-15001907*

VERIFICATION

I, **Elissa A. Waizman**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.   The matters alleged are based on information and belief, which I believe to be true.

On October 7, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Beverly Hills, CA**

-7-

*Complaint – DFEH No. 202110-15001907*

Date Filed: October 7, 2021

DFEH-ENF 80 RS

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Eliot J. Rushovich (SBN: 252343)<br>Lisa M. Watanabe-Peagler (SBN: 258182)<br>Elissa A. Waizman (SBN: 329959)<br>Rise Law Firm, PC – 8383 Wilshire Blvd., Ste 315, Beverly Hills, CA 90211<br>TELEPHONE NO.: 310-728-6588   FAX NO.: 310-728-6560<br>ATTORNEY FOR *(Name):* Andrew Kallsen | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 North Hill St.
MAILING ADDRESS: (same)
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Kallsen v. Office Depot, LLC

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>21STCV37287 |
|---|---|---|
| ☒ Unlimited  ☐ Limited<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☒ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action *(specify):* 8
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: 10/08/2021

Elissa A. Waizman
_____
(TYPE OR PRINT NAME)   ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
 Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or
  toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice–
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
 Defamation (e.g., slander, libel)
  (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)
**Employment**
 Wrongful Termination (36) Other
  Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer
   or wrongful eviction)*
  Contract/Warranty Breach–Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
   Case
 Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*
**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
   Case Matter
  Writ–Other Limited Court Case
   Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
   Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of
   County)
  Confession of Judgment *(non-
   domestic relations)*
  Sister State Judgment
  Administrative Agency Award
   *(not unpaid taxes)*
  Petition/Certification of Entry of
   Judgment on Unpaid Taxes
  Other Enforcement of Judgment
   Case
**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
   harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
   Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
   Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Kallsen v. Office Depot, LLC | 21STCV37287 |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death - Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Kallsen v. Office Depot, LLC | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☒ A6037 Wrongful Termination | 1, ②, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation          Number of parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

| LASC CIV 109 Rev. 12/18<br>For Mandatory Use | **CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION** | Local Rule 2.3<br>Page 2 of 4 |
|---|---|---|

| SHORT TITLE:<br>Kallsen v. Office Depot, LLC | CASE NUMBER |
| --- | --- |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
| --- | --- | --- | --- |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 Abstract of Judgment | 2, 6 |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123 Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190 Election Contest | 2 |
| | | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE:<br>Kallsen v. Office Depot, LLC | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS:<br>3366 East Willow Street, Signal Hill, CA 90755 |
|---|---|
| ☐ 1. ☒ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | |

| CITY:<br>Signal Hill | STATE:<br>CA | ZIP CODE:<br>90755 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 10/08/2021

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Elizabeth Munn

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT ) — MANDATORY ELECTRONIC FILING FOR CIVIL | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) **DEFINITIONS**

a) "Bookmark" A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

b) "Efiling Portal" The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

c) "Electronic Envelope" A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

d) "Electronic Filing" Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) **MANDATORY ELECTRONIC FILING**

a) **Trial Court Records**

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) **Represented Litigants**

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) **Public Notice**

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

---

2

2019-GEN-014-00

1      d)  Documents in Related Cases

2        Documents in related cases must be electronically filed in the eFiling portal for that case type if

3        electronic filing has been implemented in that case type, regardless of whether the case has

4        been related to a Civil case.

5   3) **EXEMPT LITIGANTS**

6      a)  Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt

7        from mandatory electronic filing requirements.

8      b)  Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of

9        Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused

10       from filing documents electronically and be permitted to file documents by conventional

11       means if the party shows undue hardship or significant prejudice.

12  4) **EXEMPT FILINGS**

13     a)  The following documents shall not be filed electronically:

14       i)  Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of

15         Civil Procedure sections 170.6 or 170.3;

16       ii)  Bonds/Undertaking documents;

17       iii)  Trial and Evidentiary Hearing Exhibits

18       iv)  Any ex parte application that is filed concurrently with a new complaint including those

19         that will be handled by a Writs and Receivers department in the Mosk courthouse; and

20       v)  Documents submitted conditionally under seal.  The actual motion or application shall be

21         electronically filed.  A courtesy copy of the electronically filed motion or application to

22         submit documents conditionally under seal must be provided with the documents

23         submitted conditionally under seal.

24     b)  Lodgments

25       Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in

26  paper form.  The actual document entitled, "Notice of Lodgment," shall be filed electronically.

27  //

28  //

3

2019-GEN-014-00

5) **ELECTRONIC FILING SYSTEM WORKING PROCEDURES**

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) **TECHNICAL REQUIREMENTS**

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

i) Depositions;

ii) Declarations;

iii) Exhibits (including exhibits to declarations);

iv) Transcripts (including excerpts within transcripts);

v) Points and Authorities;

vi) Citations; and

vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document accompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

b) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing.  Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.    (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

5

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) **PRINTED COURTESY COPIES**

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i)   Any printed document required pursuant to a Standing or General Order;

   ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv)  Demurrers;

   v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi)  Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) **WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS**

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(l), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

2019-GEN-014-00

11) **SIGNATURES ON ELECTRONIC FILING**

For purposes of this General Order, all electronic filings must be in compliance with California Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil Division of the Los Angeles County Superior Court.

This First Amended General Order supersedes any previous order related to electronic filing, and is effective immediately, and is to remain in effect until otherwise ordered by the Civil Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

7

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



Superior Court of California
County of Los Angeles



Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section



Consumer Attorneys
Association of Los Angeles

Southern California
Defense Counsel



Association of
Business Trial Lawyers

California Employment
Lawyers Association

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

**STIPULATION – DISCOVERY RESOLUTION**

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| | |
|---|---|
| COURT TITLE | CASE NUMBER |

   iii.   Be filed within two (2) court days of receipt of the Request; and

   iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

   c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

   d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

   e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

   It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding (or demanding or requesting) party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

Date: _____
     (TYPE OR PRINT NAME)

Date: _____
     (TYPE OR PRINT NAME)

Date: _____
     (TYPE OR PRINT NAME)

Date: _____
     (TYPE OR PRINT NAME)

Date: _____
     (TYPE OR PRINT NAME)

Date: _____
     (TYPE OR PRINT NAME)
     (TYPE OR PRINT NAME)

> _____
       (ATTORNEY FOR PLAINTIFF)

> _____
       (ATTORNEY FOR DEFENDANT)

> _____
       (ATTORNEY FOR DEFENDANT)

> _____
       (ATTORNEY FOR DEFENDANT)

> _____
       (ATTORNEY FOR _____)

> _____
       (ATTORNEY FOR _____)

> _____
       (ATTORNEY FOR _____)

**STIPULATION – DISCOVERY RESOLUTION**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

**STIPULATION -- EARLY ORGANIZATIONAL MEETING**

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, to discuss and consider whether there can be agreement on the following:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| | |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

    h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

    i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at _www.lacourt.org_ under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at _www.lacourt.org_ under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR PLAINTIFF) |

Date:

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR DEFENDANT) |

Date:

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR DEFENDANT) |

Date:

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR DEFENDANT) |

Date:

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR _____) |

Date:

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR _____) |

| | |
|---|---|
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR _____) |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| | | |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____  ► _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)

Date:

_____  ► _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____  ► _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____  ► _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____  ► _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

Date:

_____  ► _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

_____  ► _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:  _____        _____
                                                                                    JUDICIAL OFFICER

 **Superior Court of California, County of Los Angeles**

<div style="border:1px solid black; background:black; color:white;">

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control (with the parties):** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review Important Information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE:** The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the Internet.

**3. Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

**4. Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| **COURTHOUSE ADDRESS:**<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**10/08/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: ___H. Flores-Hernandez___ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | **CASE NUMBER:**<br>21STCV37287 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Steven J. Kleifield | 57 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 10/12/2021
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By H. Flores-Hernandez _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# EXHIBIT "D"

Electronically FILED by Superior Court of California, County of Los Angeles on 11/08/2021 01:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden, Deputy Clerk

Case 2:21-cv-08854-MWF-AS   Document 1-1   Filed 11/10/21   Page 117 of 137   Page ID #:128

Monica Quinn, Bar No. 198332
mquinn@littler.com
Kyra A. Buch, Bar No. 296192
kbuch@littler.com
LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, California  90071
Telephone:   213.443.4300
Fax No.:     213.443.4299

Attorneys for
OFFICE DEPOT, LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| ANDREW KALLSEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE DEPOT, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  21STCV37287<br><br>**DEFENDANT OFFICE DEPOT, LLC's ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>[*ASSIGNED FOR ALL PURPOSES TO JUDGE STEVEN KLEIFIELD*]<br><br>Trial Date: None Yet<br>Complaint Filed:   October 8, 2021 |

4864-4844-2625.1 / 063095-1798

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

1   Defendant OFFICE DEPOT, LLC (collectively, "Defendant"), answers the unverified

2   Complaint for Damages ("Complaint") filed by Plaintiff ANDREW KALLSEN ("Plaintiff") as

3   follows:

4                                    **GENERAL DENIAL**

5          Pursuant to California Code of Civil Procedure section 431.30(d), Defendant denies generally

6   and specifically each and every allegation in the Complaint, and further denies that Plaintiff is entitled

7   to general damages, past and future lost income and benefits, punitive damages, costs of suit,

8   attorneys' fees, prejudgment or post-judgment interest, declaratory relief, or any other relief of any

9   kind whatsoever.  Defendant also denies Plaintiff has sustained, or will sustain, any loss or damage in

10  the manner alleged, or otherwise, by reason of any act or omission, or any other conduct or absence

11  thereof, on the part of Defendant.

12                               **AFFIRMATIVE DEFENSES**

13         Defendant further asserts the following affirmative defenses.  By asserting these defenses,

14  Defendant does not concede that it has the burden of production or proof as to any affirmative defense

15  asserted below.  Defendant does not presently know all the facts concerning the conduct of Plaintiff

16  sufficient to state all affirmative defenses at this time.  Accordingly, Defendant will seek leave of this

17  Court to amend its answer should it later discover facts demonstrating the existence of additional

18  affirmative defenses.  Furthermore, all such defenses are pleaded in the alternative and do not

19  constitute an admission of liability or that Plaintiff is entitled to any relief whatsoever.  Defendant is

20  informed and believes that a reasonable opportunity for investigation and discovery will reveal facts

21  in support of the following affirmative defenses.

22                            **FIRST AFFIRMATIVE DEFENSE**

23                             **(Failure to State Cause of Action)**

24         1.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint

25  and each cause of action therein fail to state facts sufficient to constitute causes of action.

26                           **SECOND AFFIRMATIVE DEFENSE**

27                                        **(Consent)**

28         2.     As a separate and distinct affirmative defense, Defendant is informed and believes that

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

2

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

1   a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the

2   Complaint and each cause of action alleged therein are barred, in whole or in part, by the doctrine of

3   consent.

4                                    **THIRD AFFIRMATIVE DEFENSE**

5                                               **(Waiver)**

6          3.       As a separate and distinct affirmative defense, Defendant is informed and believes that

7   a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the

8   Complaint and each cause of action alleged therein are barred, in whole or in part, by the doctrine of

9   waiver.

10                                  **FOURTH AFFIRMATIVE DEFENSE**

11                                              **(Laches)**

12         4.       As a separate and distinct affirmative defense, Defendant is informed and believes that

13  a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the

14  Complaint and each cause of action alleged therein are barred, in whole or in part, by the doctrine of

15  laches.

16                                    **FIFTH AFFIRMATIVE DEFENSE**

17                                             **(Estoppel)**

18         5.       As a separate and distinct affirmative defense, Defendant is informed and believes that

19  a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the

20  Complaint and each cause of action alleged therein are barred, in whole or in part, by the doctrine of

21  estoppel.

22                                    **SIXTH AFFIRMATIVE DEFENSE**

23                                         **(Unclean Hands)**

24         6.       As a separate and distinct affirmative defense, Defendant is informed and believes that

25  a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the

26  Complaint and each cause of action alleged therein are barred, in whole or in part, by the doctrine of

27  unclean hands.

28  ///

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

3

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

**SEVENTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

7.     As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action alleged therein are barred to the extent that they were filed after the expiration of the applicable statutory periods, including, but not limited to, those limitations set forth in California Code of Civil Procedure sections 335.1 (two years), 338 (three years), 340 (one year), 343 (four years), California Government Code section 12960 (d) (one year), and/or any other applicable statute of limitations.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Administrative Remedies)**

8.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein cannot be maintained to the extent that Plaintiff failed to timely invoke and/or exhaust his administrative remedies.

**NINTH AFFIRMATIVE DEFENSE**

**(Claims Exceed Scope of Administrative Charge)**

9.     As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein are barred, in whole or in part, because assuming Plaintiff attempted to exhaust his administrative remedies, the causes of action asserted in the Complaint exceed the scope of any potential charges filed.

**TENTH AFFIRMATIVE DEFENSE**

**(Workers' Compensation Preemption)**

10.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein seeking damages for emotional and/or physical injury are preempted and barred by the exclusive remedy provisions of the California Workers' Compensation Act, California Labor Code section 3600, et seq., and section 132a of the California Labor Code, in that: (1) the injuries complained of occurred when Plaintiff and Defendant were subject to California

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

4

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

Labor Code sections 3600-3601; (2) at the time of the alleged injuries, Plaintiff was performing services incidental to his employment and was acting within the course and scope of his employment; (3) Plaintiff allege that his injuries were caused by his employment; (4) Plaintiff's employment was covered by workers' compensation; and (5) Plaintiff's employer paid the entire costs for that coverage. Accordingly, this Court lacks subject matter jurisdiction over said claims.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Bad Faith and/or Frivolous Claims)

11.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein are unreasonable, and/or were filed in bad faith and/or are frivolous and, for that reason, justify an award of attorneys' fees and costs against Plaintiff and his attorneys.

## TWELFTH AFFIRMATIVE DEFENSE

### (Avoidable Consequences)

12.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein are barred, in whole or in part, because Defendant (a) maintained anti-discrimination, anti-harassment, anti-retaliation, and/or open-door policies with a complaint procedure; and (b) Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities or to avoid harm otherwise.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Defendant Took Prompt Corrective Action)

13.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, cannot be maintained against Defendant because at all relevant times, Defendant took prompt and appropriate corrective action in response to Plaintiff's concerns thereby satisfying all legal obligations Defendant owed to Plaintiff, if any.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Failure To Exhaust Internal Remedies)

14.     As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal, and on that basis alleges, that the

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

5

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

1   Complaint and each cause of action set forth therein are barred, in whole or in part, by Plaintiff's

2   failure to exhaust appropriate internal remedies, as required by Defendant's employment policies.

3   ### FIFTEENTH AFFIRMATIVE DEFENSE

4   **(Managerial Privilege)**

5   15.     As a separate and distinct affirmative defense, Defendant alleges that any conduct while

6   acting in the course and scope of employment was protected by the managerial privilege and that all

7   actions taken with respect to Plaintiff's employment were undertaken and exercised with proper

8   managerial discretion in good faith, for proper and lawful reasons and/or justified by legitimate and

9   substantial business reasons.

10   ### SIXTEENTH AFFIRMATIVE DEFENSE

11   **(Failure to Engage in Protected Conduct)**

12   16.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's

13   retaliation claim is barred due to Plaintiff's failure to engage in protected conduct.

14   ### SEVENTEENTH AFFIRMATIVE DEFENSE

15   **(After-Acquired Evidence)**

16   17.     As a separate and distinct affirmative defense, Defendant alleges that to the extent it

17   acquires any evidence of wrongdoing by Plaintiff during the course of this litigation, which would

18   have materially affected the terms and conditions of Plaintiff's employment or would have resulted in

19   Plaintiff either being demoted, disciplined, or terminated by his employer, such after-acquired

20   evidence shall bar Plaintiff's claim on liability or damages or shall reduce such claims as provided by

21   law.

22   ### EIGHTEENTH AFFIRMATIVE DEFENSE

23   **(Failure to Mitigate)**

24   18.     As a separate and distinct affirmative defense, Defendant alleges that any recovery to

25   which Plaintiff might be entitled (and Defendant does not admit that Plaintiff is entitled to any

26   recovery) must be reduced by reason of Plaintiff's failure and/or refusal to exercise reasonable

27   diligence to mitigate his damages.

28   ///

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

6

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

## NINETEENTH AFFIRMATIVE DEFENSE

### (Offset)

19.     As a separate and distinct affirmative defense, Defendant alleges that any recovery to which Plaintiff might otherwise allegedly be entitled must be offset by any benefits and/or other monies and/or benefits that Plaintiff has received or will receive, whether through employment, disability insurance, unemployment insurance, workers' compensation or otherwise.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Public Policy)

20.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff was not terminated in violation of any fundamental, well-established public policy embedded in law or statute.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Mixed Motive)

21.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint and each purported cause of action therein, or some of them, are barred because although Defendant denies having discriminatory animus toward Plaintiff, to the extent that Plaintiff suffered an adverse employment action motivated in part by discrimination and/or retaliation, all acts or omissions allegedly attributed to Defendant were also motivated by nondiscriminatory and/or non-retaliatory reasons and such nondiscriminatory and/or non-retaliatory reasons alone would have induced Defendant to make the same adverse employment decision(s).

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Emotional Distress Damages Unconstitutional)

22.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff is not entitled to recover emotional distress damages because California's system of emotional distress damages is unconstitutional under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), as well as the United States and California Constitutions.

///

///

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

7

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (No Intent)

23.     As a separate and distinct affirmative defense, Defendant alleges that if Plaintiff suffered any emotional distress (and Defendant denies that Plaintiff suffered any such distress), it was not the intent of Defendant, or any person acting on Defendant's behalf.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Alleged Emotional Distress Caused by Outside Factors)

24.     As a separate and distinct affirmative defense, Defendant alleges that if Plaintiff has suffered any emotional distress as alleged in his Complaint, such emotional distress was proximately caused by factors other than the actions of Defendant and/or anyone acting on Defendant's behalf.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Punitive Damages Speculative and Unsupported)

25.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's claims for damages are precluded to the extent that such damages are speculative and/or because Plaintiff fails to plead facts sufficient to support the recovery of punitive damages.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Punitive Damages Unconstitutional)

26.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff is not entitled to recover any punitive damages because the imposition of such damages constitutes a violation of Defendant's rights under the United States and/or California Constitutions in that: 1) such damages are so punitive in purpose and effect as to constitute a criminal penalty, entitling Defendant to rights to be given to Defendant in criminal proceedings under the United States and California Constitutions; 2) such damages constitute an impermissible restriction on speech and a violation of the First Amendment of the United States Constitution; 3) the imposition of such damages would violate Defendant's rights to due process and/or equal protection under the law, under the United States and California Constitutions; and 4) the California punitive damages statute is unconstitutional in that it imposes an undue burden on interstate commerce.

///

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

8

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

1

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

2

#### (No Authorization)

3    27.    As a separate and distinct affirmative defense, Defendant alleges it is not liable for

4  punitive damages because Defendant did not (a) have advance knowledge of the unfitness of any

5  employee and employ any such employee with a conscious disregard of the rights and safety of others;

6  or (b) engage in, authorize or ratify any wrongful conduct.  Cal. Civ. Code § 3294(b).

7

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

8

#### (Contributory and/or Comparative Negligence)

9    28.    As a separate and distinct affirmative defense, Defendant is informed and believes that

10  further investigation and discovery will reveal, and on that basis alleges, that Plaintiff failed to exercise

11  reasonable and ordinary care, caution and/or prudence and the alleged injuries and damages, if any

12  were suffered, were proximately caused and/or contributed to by Plaintiff's own negligent and/or

13  intentional conduct and any recovery to which Plaintiff might be entitled must be reduced by reason

14  of Plaintiff's contributory and/or comparative negligence.

15

### TWENTY-NINTH AFFIRMATIVE DEFENSE

16

#### (No Malice, Oppression or Fraud)

17    29.    As a separate and distinct affirmative defense, Defendant alleges Plaintiff is not entitled

18  to recover punitive or exemplary damages herein, and any allegation with respect thereto should be

19  stricken, because Plaintiff cannot establish facts by clear and convincing evidence sufficient to support

20  allegations of malice, oppression or fraud.  Cal. Civ. Code § 3294(a).

21

### THIRTIETH AFFIRMATIVE DEFENSE

22

#### (Apportionment of Fault)

23    30.    As a separate and distinct affirmative defense, Defendant alleges provisionally and

24  conditionally that if Plaintiff suffered any damages, such damages were proximately or legally caused

25  by the misconduct of Plaintiff and/or parties other than Defendant and, accordingly, any award of

26  damages must be reduced in whole or in part, or apportioned in proportion to the percentage of

27  comparative fault of the Plaintiff, other parties and/or unauthorized individuals, including both

28  economic and non-economic damages.  In the event of such apportionment, Defendant is entitled to a

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

4864-4844-2625.1 / 063095-1798

9

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

separate judgment for non-economic damages in direct proportion to their respective percentages of fault, if any is found, notwithstanding Defendant's continuing denial of any fault, pursuant to California Civil Code section 1431.2, with such percentage determined by the comparative fault of all parties, non-parties and/or unauthorized individuals to this action, known or unknown.  To assess any greater percentage of fault and damages than their own against Defendant would constitute a denial of equal protection of the law and due process which is guaranteed by the United States and California Constitutions.

<div align="center">

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

**(Outside Course and Scope)**

</div>

31.    As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein cannot be maintained against it because to the extent any employee engaged in any unlawful conduct, such conduct was committed outside the course and scope of such employee's employment, was not authorized, adopted or ratified by Defendant, and/or Defendant did not know nor should have known of such conduct.

<div align="center">

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

**(Legitimate, Non-Discriminatory Basis for Employment Decision)**

</div>

32.    As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint and each cause of action therein, or some of them, are barred because all acts or omissions allegedly attributed to Defendant represent the just and proper exercise of Defendant's managerial discretion and were undertaken for non-discriminatory, non-retaliatory, and honest reasons, regulated by good faith and probable cause under the circumstances existing at the time of such acts or omissions.

<div align="center">

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(Business Necessity)**

</div>

33.    As a separate and distinct affirmative defense, Defendant alleges, without admitting that Defendant engaged in any of the acts or omissions alleged in Plaintiff's Complaint, that any such acts or omissions were undertaken for business necessity and/or for lawful business reasons.

///

<div align="center">

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(No Entitlement to Prejudgment Interest)**

</div>

34.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein fail to state a claim upon which prejudgment interest may be granted because the damages claimed are not sufficiently certain to allow an award of prejudgment interest.

<div align="center">

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

**(Accord and Satisfaction)**

</div>

35.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint and each cause of action therein, or some of them, are barred to the extent Plaintiff released the claims and damages sought and/or acknowledged an accord and satisfaction of any claim asserted in the Complaint.

<div align="center">

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**(Offset or Set-Off)**

</div>

36.     As a separate and distinct affirmative defense, Defendant alleges that even if Plaintiff is entitled to any compensation as a result of the Complaint and a cause of action set forth therein, which Defendant denies, any such compensation must be offset in an amount equal to the amount(s) recovered by and/or previously paid to Plaintiff for the same or similar claims asserted in any related cases or charges, received fraudulently or inappropriately by Plaintiff as workers' compensation, disability or unemployment benefits, wages and/or other monies and/or benefits Plaintiff has received or will receive so as to prevent unjust enrichment of Plaintiff.

<div align="center">

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Violation of Due Process)**

</div>

37.     As a separate and distinct affirmative defense, Defendant alleges that the imposition of replicating individual penalties would deprive Defendant of its constitutional right to due process under the Fourteenth Amendment of the United States Constitution and under the Constitution and laws of the State of California. *See State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408 (2003); *People ex. rel. Lockyer v. R.J. Reynolds*, 37 Cal. 4th 707 (2005); *Ratner v.*

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

4864-4844-2625.1 / 063095-1798

11

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

*Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972).

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Breach of Duties)

38.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's claims are barred by his own breach of duties owed to Defendants, including but not limited to those under California Labor Code sections 2853, 2854, 2856, 2857 and 2859.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Conduct by Others)

39.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's Complaint cannot be maintained against Defendant because any alleged losses or harms sustained by Plaintiff, if any, which Defendant denies resulted from causes other than any act or omission, if any, by Defendant.

### FORTIETH AFFIRMATIVE DEFENSE

### (At-Will Employee)

40.     As a separate and distinct affirmative defense to the Complaint and each purported cause of action therein, Defendant alleges that they are barred, in whole or in part, because Plaintiff was an at-will employee with no entitlement to continued employment pursuant to Section 2922 of the California Labor Code.

### FORTY-FIRST AFFIRMATIVE DEFENSE

### (No Reasonable Accommodation)

41.     As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis allege that the Complaint and each cause of action set forth therein is barred because, to the extent that Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonably accommodate such disability, no reasonable accommodation exists or existed which would have permitted Plaintiff to perform the essential functions of any position which he claims he should have been hired to perform.

///

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

12

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

1

2

### FORTY-SECOND AFFIRMATIVE DEFENSE

#### (Plaintiff Not Qualified Individual)

3      42.      As a separate and distinct affirmative defense, Defendant is informed and believes that

4  a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges, that the

5  Complaint and each cause of action set forth therein, or some of them, are barred because Plaintiff, if

6  disabled, was not a qualified individual because he could not perform the essential functions of any

7  job which he claims he should have been hired to perform, with or without reasonable accommodation.

8

### FORTY-THIRD AFFIRMATIVE DEFENSE

9

#### (Bona Fide Dispute)

10      43.      As a separate and distinct affirmative defense, Defendant alleges that the Complaint

11  and each cause of action set forth therein cannot be maintained because good cause existed for each

12  and every action taken by Defendant with respect to Plaintiff, and Defendant acted reasonably and in

13  good faith, at all times, based upon all relevant facts and circumstances known by Defendant at the

14  time it acted.  Defendant further alleges that any violation of the California Labor Code or of a Wage

15  Order of the Industrial Welfare Commission was an act or omission made in good faith, and that in

16  any participation in such acts, Defendant had reasonable grounds for believing that the act or omission

17  was not a violation of the California Labor Code or any Wage Order of the Industrial Welfare

18  Commission.

19

### FORTY-FOURTH AFFIRMATIVE DEFENSE

20

#### (Estoppel/Res Judicata)

21      44.      As a separate and distinct affirmative defense, Defendant believes that a reasonable

22  opportunity for investigation and discovery will reveal and, on that basis alleges, that Plaintiff's

23  Complaint and each cause of action alleged therein, or some of them, are barred, in whole or in part,

24  by the doctrine of doctrine of estoppel and/or res judicata.

25

### FORTY-FIFTH AFFIRMATIVE DEFENSE

26

#### (Failure to Report or Engage in Protected Activity Under Labor Code Section 1102.5)

27      45.      As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's cause

28  of action under California Labor Code section 1102.5 is barred because Plaintiff did not report or

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

4864-4844-2625.1 / 063095-1798

13

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

disclose any information to a government or law enforcement agency and cannot show he engaged in any activity protected by California Labor Code section 1102.5..

### FORTY-SIXTH AFFIRMATIVE DEFENSE

**(No Violation Of Or Noncompliance With Local, State, Or Federal Rules Or Regulation Under Labor Code Section 1102.5)**

46.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's cause of action under California Labor Code section 1102.5 is barred because any alleged disclosure did not arise from any violation of or noncompliance with a local, state, or federal rule or regulation.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

**(Legitimate Basis for Employment Decision)**

47.     As a separate and distinct affirmative defense, under California Labor Code section 1102.6, Defendant alleges that even if Plaintiff could demonstrate by a preponderance of the evidence that his engagement in an activity protected by California Labor Code section 1102.5 was a contributing factor in the alleged prohibited action against him, the alleged action would have been taken for legitimate, independent reasons even if Plaintiff had not engaged in any activity protected by California Labor Code section 1102.5.

### RESERVATION OF ADDITIONAL DEFENSES

Defendant alleges that because the Complaint is couched in vague and conclusory terms, all defenses that may be applicable cannot be fully anticipated.  Accordingly, the right to assert additional defenses, if and to the extent that such defenses are applicable, is reserved.  In addition, Defendant reserves the right to amend their Answer should Defendant later discover facts demonstrating the existence of new and/or additional defenses, and/or should a change in the law support the inclusion of new and/or additional defenses.

### PRAYER

WHEREFORE, Defendant prays that:

1.     The Complaint be dismissed in its entirety with prejudice;

2.     Plaintiff take nothing by way of his Complaint;

3.     Defendant be awarded judgment in its favor and against Plaintiff;

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

14

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

1    4.    Defendant recover its costs of suit incurred herein; and

2    5.    The Court grants Defendant such other relief as it deems just and proper.

3    Dated: November 8, 2021                LITTLER MENDELSON P.C.

4

5

6    Monica Quinn
     Kyra A. Buch
7    Attorneys for OFFICE DEPOT, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA. 90071
213.443.4300

4864-4844-2625.1 / 063095-1798                15

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 633 West 5th Street, 63rd Floor, Los Angeles, California 90071. On November 8, 2021, I served the within document(s):

**DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMANGES**

☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses below and *(specify one):*

   ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at*: Los Angeles, California*.

☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **BY PERSONAL SERVICE** by messenger service. I caused said documents to be served by having a professional messenger service, EXPRESS NETWORK, personally deliver them to the persons at the addresses listed below. (A confirmation document by the professional messenger service will be retained in our office.)

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

16

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

☐    **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☒    **By electronic service.** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed below.

Eliot J. Rushovich                       ***ATTORNEYS FOR PLAINTIFF***
Lisa M. Watanabe-Peagler
Elissa A. Waizman
RISE LAW FIRM
8383 Wilshire Blvd., Suite 315
Beverly Hills, CA 90211
T: 310.728.6588
F: 310.728.6560
E: eliot@riselawfirm.com
   lisa@riselawfirm.com
   elissa@riselawfirm.com

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on November 8, 2021, at Los Angeles, California.

                                                    /s/ Mary An
                                           Mary An

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4864-4844-2625.1 / 063095-1798

17

DEFENDANT OFFICE DEPOT, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**<br>**Branch Name:** Stanley Mosk Courthouse<br>**Mailing Address:** 111 North Hill Street<br>**City, State and Zip Code:** Los Angeles CA 90012 | |
| **SHORT TITLE:** ANDREW KALLSEN vs OFFICE DEPOT, LLC.<br><br>**NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | **CASE NUMBER:**<br>21STCV37287 |

The Electronic Filing described by the below summary data was reviewed and accepted by the Superior Court of California, County of LOS ANGELES. In order to process the filing, the fee shown was assessed.

**Electronic Filing Summary Data**

Electronically Submitted By:  Legal Connect
Reference Number: 4933505_2021_11_08_21_29_07_253_0
Submission Number: 21LA04327263
Court Received Date: 11/08/2021
Court Received Time: 1:34 pm
Case Number: 21STCV37287
Case Title: ANDREW KALLSEN vs OFFICE DEPOT, LLC.
Location: Stanley Mosk Courthouse
Case Type: Civil Unlimited
Case Category: Wrongful Termination
Jurisdictional Amount: Over $25,000
Notice Generated Date: 11/08/2021
Notice Generated Time: 1:34 pm

| **Documents Electronically Filed/Received** | **Status** |
|---|---|
| Answer | Accepted |

**Comments**
Submitter's Comments:

Clerk's Comments:

**Electronic Filing Service Provider Information**
Service Provider: Legal Connect
Contact: Legal Connect
Phone: (800) 909-6859

---

**NOTICE OF CONFIRMATION OF FILING**

# EXHIBIT "E"

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| Eliot J. Rushovich (SBN: 252343)<br>Lisa M. Watanabe-Peagler (SBN: 258182)<br>Elissa A. Waizman (SBN: 329959)<br>Rise Law Firm, PC – 8383 Wilshire Blvd., Ste 315, Beverly Hills, CA 90211 | | |

ATTORNEY FOR (Name): Andrew Kallsen

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
111 North Hill St., Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
Andrew Kallsen

DEFENDANT/RESPONDENT:
Office Depot, LLC, et al.

| PEREMPTORY CHALLENGE TO JUDICIAL OFFICER<br>(Code Civ. Proc, § 170.6) | CASE NUMBER:<br>21STCV37287 |
|---|---|

| Name of Judicial Officer: (PRINT)<br>Steven J. Kleifield | Dept. Number:<br>57 |
|---|---|
| ☒ Judge            ☐ Commissioner            ☐ Referee | |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

## DECLARATION

**I declare under penalty of perjury, under the laws of the State of California, that the information entered on this form is true and correct.**

Filed on behalf of: Andrew Kallsen
               Name of Party

☒ Plaintiff/Petitioner    ☐ Cross Complainant
☐ Defendant/Respondent  ☐ Cross Defendant
☐ Other: _____

Dated: October 25, 2021

_____
Signature of Declarant

Elissa A. Waizman
Printed Name

**PEREMPTORY CHALLENGE TO JUDICIAL OFFICER**
**(Code Civ. Proc., § 170.6)**

Code Civ. Proc., § 170.6

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: 8383 Wilshire Boulevard, Suite 315 in Beverly Hills, California 90211.  On **October 25, 2021,** I served the foregoing document(s) that, as indicated therein, are described as:

### PLAINTIFF'S PEREMPTORY CHALLENGE TO JUDICIAL OFFICER

On the following interested party(-ies):

CT Corporation System
c/o Office Depot, LLC
330 North Brand Blvd, #700
Glendale, CA 91203

☒ **(REGULAR MAIL)** By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and placing such envelope for collection and mailing on the date set forth above following this firm's ordinary business practice. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice a correspondence would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in Beverly Hills, California in the ordinary course of business.

☐ **(HAND DELIVERY)** By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered by hand to the addressee(s) designated through One Legal.

☐ **(BY FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE)** By placing a true and correct copy if the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered to the FEDERAL EXPRESS Service Center, and to be delivered by their next business day delivery.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **October 25, 2021** in Beverly Hills, California.

Deannea Jefferson
[Print Name Of Person Executing Proof]

*Deannea Jefferson*
[Signature]